### JAMES C. COOKE *vs.* JOHN S. BARR AND ANOTHER.

The defendants covenanted that they would " in a reasonable time take measures for the formation of a company, with a capital of $175,000," to use certain patents, and would deliver the patentee $10,000 in paid up stock, in full payment for the patents. The defendants made all reasonable efforts to get up such a company, but were not able, and the invention proved to be worthless. Held—that the contract did not bind the defendants in all events to get up such a company, and that it was enough if they had made all reasonable effort to do it.

And held that proof on the part of the defendants that the invention was worthless was admissible.

A new trial will not be granted to enable a plaintiff to recover nominal damages.

COVENANT; brought to the Superior Court and tried on the general issue, with notice, closed to the court, before *Minor J.*

The agreement upon which the suit was brought was as follows :

" This memorandum of agreement, made this 22d day of April, 1867, by and between James C. Cooke of Middletown, Connecticut, of the first part, and John Barr and John S. Benham, both of Bridgeport, of the second part, witnesseth—

" That whereas the said parties of the second part have this day purchased of the said Cooke all the right, title and interest in and to certain improvements in machines for cutting files, and to letters patent of said Cooke therefor, dated February 20th, 1866, together with a machine constructed under said patent, and all the drawings, models, &c., relating to or connected therewith, and have also purchased of said Cooke the entire right, title and interest in and to certain improvements by him in machines for sharpening tools, and to letters patent that may be granted therefor upon an application of said Cooke now pending, together with all drawings, models, &c., relating thereto or connected therewith, together with one machine constructed under said patent claim, which said parties have also purchased :

" Now, in consideration thereof, and in farther consideration of the covenants of the said parties of the second part hereinafter set forth, the said Cooke does for himself, his heirs, executors and assigns, covenant and agree to and with said parties that he will hereafter assign and convey to the said parties of the second part or their legal representatives, without further compensation therefor than is herein set forth, any and all improvements or inventions whatsoever that he may hereafter devise or make in connection with or relating to said inventions and improvements, or either of them, so that the same may be patented by the said parties of the second part for their own use and benefit ; and will faithfully assist and co-operate with them in all respects as may be legally necessary or otherwise requisite to enable them to obtain patents therefor to the exclusion of other parties ; and will also assign and deliver to them as aforesaid any and all

drawings, models, &c., pertaining to or connected with said future improvements, inventions and patents.

" And the said parties of the second part, in consideration of the aforesaid sales and transfers, and of the said covenants of the said party of the first part as herein set forth, and of his faithful performance of the same, hereby covenant and agree to and with said Cooke, that they will in a reasonable time take measures for the formation of a company or companies to use and operate under the said inventions and patents, with a capital stock of one hundred and seventy-five thousand dollars, and that they will upon the formation of said company issue to Sara J. Cooke of Hartford, so many shares of full paid stock therein as shall amount in par value to ten thousand dollars, which is to be accepted in full payment for the sale and transfers above named of the said file-cutting machine and tool-sharpening machine and of the patents, drawings, &c., connected therewith.

" And they farther covenant and agree that as payment and consideration for the agreement of said Cooke to transfer to them all future improvements, &c., with models and drawings as aforesaid, and of his compliance therewith, the said parties of the second part will pay to the said James C. Cooke, upon the execution of this agreement, the sum of two thousand dollars in cash, and will, upon the formation of said company as aforesaid, issue to the said Sara J. Cooke so many shares of full paid stock therein as shall amount to two thousand dollars in par value, and will pay to her the sum of two thousand dollars in cash as soon as the sum of twenty thousand dollars cash shall have been subscribed and actually paid in to said company. In witness whereof we have hereunto set our hands and seals, &c."

The said Sara J. Cooke, previous to the bringing of the suit, had assigned all her interest in the agreement to the plaintiff.

Upon the trial the following facts were found by the court:

The plaintiff proved and the defendants did not deny the due execution and delivery of the agreement and of the as-

signment thereof, as set forth in the declaration, and the delivery and acceptance of the machines, drawings and models.

The plaintiff has not made any improvements upon, or relating to, either of the machines. The defendants have never formed, and upon request made to them by the plaintiff in December, 1868, refused to make any farther efforts to form, any company or companies for the purpose and with the capital stock provided for in the agreement, and have never transferred or offered to transfer any stock to Sara J. Cooke, or to the plaintiff, which were the only breaches of the agreement for which the plaintiff claimed to recover. No evidence was offered and no claim made respecting the tool-sharpening machine.

The plaintiff in rebuttal of evidence offered by the defendants, offered evidence to prove, and claimed to have proved, that the file-cutting machine was a good practical machine and cut good merchantable files, and ten times faster than they could be cut by hand, and that there was no difficulty with proper exertions in forming a company or companies to use it with success. This evidence the defendants objected to, but the court admitted it.

The plaintiff claimed that the defendants were bound to take effectual measures to form the company or companies, and upon the facts aforesaid were liable. The defendants claimed they were bound only to take reasonable measures and make proper exertions to form the company or companies, and in connection with proof of the measures they had taken and the exertions they had made, and to show that the same were reasonable and proper, offered evidence to prove that since the contract was made they had faithfully endeavored with the machine to cut merchantable files, and had found by the experiments they had made that the files so cut were imperfect and not merchantable; that this imperfection resulted from the imperfection of the machine, and that the same so far as its value depended upon its use in file-cutting was worthless, and the invention secured by the patent as evidenced by the machine was of no value. To the admission of this testimony the plaintiff objected generally, and particu-

larly on the ground that the consideration of the agreement could not be inquired into. The court admitted it for the purpose for which it was offered, and from all the evidence in the case found that said machine for practical use in cutting files was worthless, and the invention secured by the patent as evidenced by the machine of no value ; that the defendants in a reasonable time took all reasonable measures and made all proper exertions for the formation of a company or companies for the purpose and with the capital stock provided for in the agreement, and that no such company could or ought to be formed, and overruled the claim of the plaintiff.

The plaintiff offered evidence to prove, and the court found, that before the sale and purchase of the machine he told the defendants to examine it and the work done by it for themselves, and satisfy themselves as to what the machine was capable of doing before they should purchase, and that they by themselves and by an experienced file-cutter employed for that purpose, examined the machine and observed it in operation, and also examined the files cut by it. The court also found that the plaintiff at the same time represented that the machine was perfect and would cut and continue to cut good merchantable files, as good as files cut by hand and eight or ten times faster ; that the defendants had had no experience in file-making, and that from their examination and observation, and from the plaintiff's representations, they were, and expressed themselves to be, satisfied with the machine, and the work it appeared and was represented capable of doing. The plaintiff thereupon claimed that the defendants had no right now to object to the machine or to the imperfection of the work done by it, and requested the court so to decide, but the court did not so decide.

The plaintiff offered evidence to prove that, at the time when the agreement was executed, and ever since, the defendant Barr was worth one hundred thousand dollars, and the defendant Benham twenty-five thousand dollars ; and thereupon claimed that the agreement admitted of the formation of more than one of any number of companies whose aggregate capital stock should not exceed one hundred and seventy-

five thousand dollars ; that it was in the power of the defendants, and that it was their duty, at any time after the execution of the agreement to have formed a joint stock company, with a capital stock of ten thousand or twenty thousand dollars, and to have paid in the capital stock in full and then to have transferred ten thousand dollars of the stock to Sara J. Cooke, or to the plaintiff, which either was at all times ready to accept in full, and requested the court so to decide. The court found the value of the property of the defendants to be as claimed, but farther found that the defendants could not, by the use of reasonable measures and efforts form, and that they ought not to form, a company with any amount of capital based upon the file-cutting machine, which the court from the evidence found to be utterly worthless, and overruled the claim of the plaintiff.

The plaintiff also claimed that the defendants had the right under the agreement, and that it was their duty, to form a company not a corporation with a specified capital stock less than the aggregate amount mentioned in the agreement, provided a company with a capital stock of $175,000 could not be formed, and then to have transferred to Sara J. Cooke stock in the partnership company for $10,000, and that such transfer to her before her assignment, or to the plaintiff since, would have satisfied her demand, and prayed the court so to decide, but the court did not so decide.

The court having rendered judgment for the defendants, the plaintiff moved for a new trial for error in the rulings of the court as to the admission of evidence and in the decision of the court upon the points of law stated.

*Sturges,* in support of the motion.

1. The court erred in holding that the covenant of the defendants did not impose upon them the obligation to take effectual measures for the formation of a company. The contract is to be construed according to the plain literal import of its language, for the intent of the parties is to be gathered from the language they have used. No extrinsic facts are shown in any way affecting the plain import of that

language. They covenant to take measures for the formation of a company or companies, and upon the formation of a company to transfer stock to the amount of ten thousand dollars. Now if the agreement had been silent regarding any measures to be taken for the formation of a company, the law would have implied a covenant to form one, for without one they could not issue the stock which they had covenanted to do. *Hudson Canal Co.* v. *Pennsylvania Coal Co.*, 8 Wall., 289 ; *McIntyre* v. *Belcher*, 14 Com. Bench, N. S., 664 ; *Barton* v. *McLean*, 5 Hill, 256. The substance of the agreement in few words is, that for the transfer of this property, the defendants will pay in the stock of a company formed to operate with this patent. No other compensation is provided for. Can the insertion in the agreement of the words that they will take measures to form a company relieve them from the obligation which would necessarily be implied if the agreement were silent ? But the language used imports an absolute agreement to form a company, and if such be its import it is wholly immaterial whether they could or could not form one. To take measures to form a company imports the use of means to form a company ; and a covenant to use means to form a company, necessarily imports the use of means capable of forming it ; otherwise the means would not be used which were agreed to be used. The court had no right to incorporate into this agreement the words " reasonable and proper," and thus make an obligation, which is imperative and absolute, contingent and depending on the ability of the defendants to perform it. *Parkhurst* v. *Smith*, Willes, 332 ; *Hudson Canal Co.* v. *Penn. Coal Co.*, 8 Wall., 289 ; *Bealy* v. *Stuart*, 7 Hurlst. & Norm., 753 ; *Midland Railway Co.* v. *London & North Western Railway Co.*, Law Reps., 2 Eq. Cas., 529. But the language actually used by the parties shows conclusively that they purposely intended to exclude the words incorporated by the court. At the very time this covenant was written and executed they had in their minds the very word here supplied, and used it in defining the time within which the company should be formed, and omitted to use it in connection with the measures which they bound

themselves to take, which cannot be well accounted for except upon the supposition that they did not intend to use the word there, and in that case the court cannot supply it. *Midland Railway Co.* v. *London North Western Railway Co.*, Law Reps., 2 Eq. Cas., 529. The defendants having bound themselves to form a company, they are liable in this action, even if it were impossible for them to form one, for they should have provided against this liability by their contract. *Hale* v. *Rawson*, 4 Com. Bench, N. S., 85 ; *Bute* v. *Thompson*, 13 Mees. & Wels., 487 ; *Hills* v. *Sughrue*, 15 id., 253. But the court has not found in this case that it was impossible for the defendants to form a company, but only that by the use of reasonable efforts they could not form one.

2. The court erred in admitting evidence that the invention was of no value. 1 Smith Lead. Cas., 273 ; *Reed* v. *Randall*, 29 N. York., 358 ; *Barnard* v. *Kellogg*, 10 Wall., 388 ; *Horsfall* v. *Thomas*, 1 Hurlst. & Colt., 90.

*Treat* and *DeForest*, contra.

1. The court was right in holding that the defendants were bound by their covenant only to take all reasonable measures and make all proper exertions to form a company. Chitty on Cont., 74 ; 2 Parsons on Cont., 494, 500 ; *Gutteridge* v. *Munyard*, 7 Car. & P., 129 ; *Jones* v. *Shears*, id., 346 ; *Livingston* v. *Tyler*, 14 Conn., 493, 500 ; *Water Lot Company* v. *Leonard*, 30 Geo., 560 ; *Toms* v. *Wilson*, 4 Best & Smith, 442 ; *Field* v. *Woodmancey*, 10 Cush., 427 ; *Hanson* v. *Boothman*, 13 East, 22.

2. If bound to form a company at all events to sell a worthless invention, the defendants would have been defrauding the public, and a contract is always to be so construed, if possible, as to be legal and in accordance with public policy. Chitty on Cont., 80 ; 2 Parsons on Cont., 500, 673 ; *Davison* v. *Seymour*, 1 Bosw., 88 ; *Mills* v. *Mills*, 40 N. York, 543 ; *Bloss* v. *Bloomes*, 23 Barb., 604 ; *Fuller* v. *Dame*, 18 Pick., 472, 481 ; *Spinks* v. *Davis*, 32 Miss., 152 ; *White Mountain R. R. Co.* v. *Eastman*, 34 N. Hamp., 124 ; *Stanton* v. *Allen*, 5 Denio, 434 ; *Duvergier* v. *Fellows*, 5 Bing., 248 ; *Bailey* v. *Lewis*, 3 Day, 450, 464.

3: If the plaintiff can recover, it can be only for nominal damages, since the stock would have been worthless, and a new trial will not be granted for such a purpose.

CARPENTER, J. This is an action of covenant. In the instrument declared on, the defendants covenant "that they will in a reasonable time take measures for the formation of a company or companies to use and operate under the said inventions and patents, with a capital stock of one hundred and seventy-five thousand dollars," &c., and to issue to Sara J. Cooke, (who assigned her interest to the plaintiff,) capital stock to the par value of ten thousand dollars, which was to be in full payment for the machines therein referred to. Other covenants are contained in it, but as no question arises in respect to them it is unnecessary to notice them further. The plaintiff claimed that the clause above quoted is to be so construed as to require the defendants to take *effectual* measures, &c. ; and the defendants claimed that they were only required to take reasonable and proper measures, &c. The court sustained the defendants' claim. To this ruling the plaintiff excepted, and that presents the important question in the case.

In this, as in other contracts, our object should be to discover the intention of the parties. That must be ascertained from the language used, having regard to the subject matter, and the circumstances surrounding the transaction. The plaintiff's construction requires us to insert in the covenant the word "effectual," or otherwise to interpret it as importing an absolute obligation. Should we do so, the danger is that we should make a contract for the parties different from that made by themselves. Had they intended that their contract should be understood in that sense, they doubtless would have used language clearly evincing such an intention. The fact that they did not do so, and the language employed, indicate that the parties contemplated the possibility of a failure, from some cause, in the formation of a company. We must if possible give effect to all the words. We can only give a meaning to the words, "take measures for the formation of a com-

pany," by construing them as qualifying to some extent the obligation assumed.

A brief consideration of the subject matter will confirm this view. It is a new invention secured by letters patent. Perhaps it is not too much to say that of all business enterprises those which are based upon newly patented inventions are the most uncertain in their results. Comparatively very few of such inventions are really valuable. In most cases their value cannot be determined absolutely, except by actual experience. Experiments and test trials often fail to give correct indications. The success of an enterprise will frequently depend upon a. great variety of circumstances, apparently small and insignificant in themselves, and which cannot be brought within the range of mere experimental tests. And when it is ascertained that an invention is truly valuable, it is then subjected to all manner of competition with rival inventions, and frequently requires protracted and expensive litigation to establish its priority, or protect it from infringement. Contracting in relation to property so uncertain in its character, and the value of which depends so much upon unforeseen contingencies, we should expect men of ordinary prudence and sagacity to use cautious and guarded language. No one knows the hazardous nature of this kind of property better than the inventor himself. He invests his skill, time and money with knowledge of all the risks. When his invention is complete he knows too that its value, and the value of stock in a corporation formed to operate it, must depend largely upon its successful operation. When invention and capital thus unite to engage in business, we suppose that it is ordinarily done through the agency of a corporation, and that the invention goes in as so much capital. The whole capital invested, whether in money or invention, is exposed to the ordinary risks of business, and each stockholder assumes his proportion of the risk. That was manifestly the intention of the parties to this contract. The plaintiff's interpretation contravenes that intention. If we adopt it, upon the facts found, one of three things must be true. 1st, the covenant must be regarded as equivalent to a covenant to pay

so much money; 2d, the court must countenance and encourage an enterprise, the success of which must depend upon the extent to which the public may be defrauded; or, 3d, the plaintiff's stock acquired under the covenant must be worthless. The first contemplates the formation of a company with a paid up capital, and an immediate dissolution and division of the capital among the stockholders. The supposition that such was the intention of the parties is absurd. The second contemplates the dealing in territorial rights with a worthless invention. Such business can receive no encouragement from this court. The third contemplates the business of manufacturing files, which, when ready for market, are worthless. The result must be speedy bankruptcy, in which case the stock is worthless. In that event the plaintiff would be entitled only to nominal damages, to enable the party to recover which this court will not grant a new trial.

We come to the conclusion therefore, both from the language of the instrument and from the subject matter, that the interpretation claimed by the defendants is the correct one, and that the parties intended only that the defendants should take reasonable measures and make proper efforts to form a company for the purpose specified.

What must be regarded as reasonable and proper efforts must depend upon circumstances. The prospect of success or failure is certainly a material circumstance, and that must depend largely upon the value of the invention. The evidence of its value therefore was admissible. Upon all the evidence the court below found explicitly that the machine was worthless, that the invention was of no value, that the defendants in a reasonable time took all reasonable measures and made all proper exertions for the formation of a company for the purposes specified, and that no such company could be formed.

We entertain no doubt that the case was properly decided, and a new trial must be refused.

In this opinion the other judges concurred.