Todd *v.* Bradley.

JAMES E. TODD, TRUSTEE, *vs.* WALTER H. BRADLEY ET ALS.

Third Judicial District, Bridgeport, April Term, 1923.

WHEELER, C. J., BURPEE, KEELER, KELLOGG and MALTBIE, Js.

The "plain and concise statement" of a cause of action required of a plaintiff by General Statutes, §§ 5630, 5637, as applied to a suit by a trustee in bankruptcy to recover property conveyed away by the bankrupt in fraud of his creditors, is satisfied by an averment that the bankrupt, over a stated period and with the connivance of named persons, had repeatedly transferred portions of his property without consideration, and with the intent and effect of concealing it and defrauding his creditors; and a recital of the devices by which he accomplished his purpose is a statement of matter merely evidential, which may properly be expunged from the complaint by the trial court.

It is never necessary to anticipate a defense; and hence it is not error for the court to expunge from a complaint allegations that the defendants concealed their acts until within the period of limitation. Such ruling, moreover, becomes harmless, if, as in the present case, evidence touching the point is freely admitted on the trial.

The inadvertent inclusion by the court in the statement of its decision, of an issue not seriously presented by any party nor essential to the determination declared, is harmless, if the record plainly shows that the judgment rendered was founded on other valid and substantial grounds.

Whether facts were found "contrary to the evidence," is not for this court to decide; but only whether they were found "without evidence."

Todd *v.* Bradley.

Inferences and conclusions of fact drawn by the trial court from the subordinate facts found, when made logically, reasonably and in accordance with the principles of law, are final.

The court found that the bankrupt did not transfer his property with intent to hinder or defraud his creditors and without consideration, that neither he nor any of the defendants conspired to that end, and that none of the property in question belonged to him at the time of the adjudication in bankruptcy. *Held*, upon an examination of the whole record, that these findings, which overthrew the foundation of the plaintiff's case, were not to be disturbed.

A New York judgment against a bankrupt having been admitted to show the existence of a debt against him, it was later offered by the plaintiff to contradict him and his wife (the recipient of the property in question) and to show actual ownership by the bankrupt of certain personalty from which the wife later realized a considerable sum of money. *Held* that on several grounds the offered evidence was properly excluded, among which were the facts that it concerned a transfer to the wife anterior to the date set in the complaint as the commencement of the alleged fraudulent acts, that the wife was not a party to the New York suit, and that nothing in it fairly contradicted the defendants' testimony but merely corroborated what they had admitted and explained.

While a party to a suit is not bound by the testimony of his witnesses on material matters but may prove a fact to be other than as stated by them, yet he may not contradict them on collateral or immaterial matters merely for the purpose of impeaching them and diminishing the weight of the testimony he has invited them to give.

The testimony of a witness, since deceased, given before a referee in bankruptcy upon the general examination of the bankrupt, is not admissible in an action subsequently brought against the latter; and the reason for the exclusion of such testimony is not the lack of opportunity for cross-examination, but that hearings of this kind are in the nature of "fishing excursions," not confined to well-defined issues properly made known to all concerned, nor with opportunity afforded to them to present evidence and be heard on questions of fact or law which may be raised or involved in the investigation. Under such conditions the rules of evidence cannot be carefully applied, and the proceedings lack in these particulars the elements of due process of law by which only a person may be deprived of his property.

The case of *In re Durant*, 80 Conn. 140, explained and distinguished.

Argued April 17th—decided July 27th, 1923.

COMPLAINT by a trustee in bankruptcy alleging a long course of fraud by the defendant bankrupt and

his wife in hiding and concealing his property from his creditors, and praying for an accounting, a discovery and production of books and papers, damages of $1,200, and other relief, brought to and tried by the Superior Court in New Haven County, *Warner, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *No error.*

Five other similar suits were tried with this, and judgment rendered in each case for the defendants.

*Robert C. Stoddard* and *Frederick H. Wiggin,* with whom was *William C. Mueller,* for the appellant (plaintiff).

*Benjamin Slade,* with whom was *Harry W. Asher,* for the appellees (defendants).

BURPEE, J. In December, 1915, the defendant Walter H. Bradley was adjudicated a bankrupt in the United States District Court, and the plaintiff was appointed trustee of his estate. In June, 1916, this trustee brought seven separate actions against Bradley and his wife, in some of which his minor daughters and other persons were joined as defendants. The cause of action set up in each of the complaints is the same and the allegations are identical, except that in each different property is specified and made the peculiar object of action. In the case which bears the docket number 12261, Walter H. Bradley, Anna M. Bradley, his wife, and the Meriden National Bank were summoned as defendants, and the property specified is the equity in twenty-five shares of its capital stock which, it is alleged, the bank holds as collateral security for a note of $5,000 signed by Anna M. Bradley and discounted for the use and benefit

of Walter H. Bradley; and for relief, the plaintiff claims a decree that the bank sell this stock, and after paying the note, pay the balance of the proceeds to the plaintiff, or $1,200 damages; with "such other relief as to law and equity may pertain."

The material facts set forth in this complaint as the basis of the cause of action, are that the defendant Bradley, since about the year 1900, with the connivance and assistance of his wife and at times of other persons, has been continuously pursuing a course of conduct of transferring all of his property, except a small part of little value, to his wife or daughters or to certain business associates, without consideration, and with the intent and effect of concealing it from his creditors, and of hindering, delaying and defrauding them. Evidently these are the facts upon which the pleader relies, and only "a plain and concise statement" of them was required and is sufficient under our rules of practice (General Statutes, §§ 5630, 5637). But the plaintiff has inserted in the complaint paragraphs in which he sets out some of the evidence by which he expected to prove the essential facts, describing therein the means and methods used by the bankrupt defendant in general transactions with the other defendants and the devices by which he had retained for himself the property or the income of property fraudulently conveyed to others, and telling how the bankrupt's wife, since his illness, had assumed control of such transactions, and asserting that they had concealed their acts from the plaintiff and the bankrupt's creditors until they were revealed in the bankruptcy proceedings, and that since that time the plaintiff and his attorneys "have been engaged in unearthing and exposing the measure of the frauds practiced upon them." These matters are merely evidential and unnecessary description.

Therefore the trial court did not err in granting the defendants' motion to expunge them. General Statutes, § 5639. Their exclusion did not weaken the complaint. The allegation that the defendants concealed their acts until the bankruptcy proceedings in 1915 was not necessary to avoid the statute of limitations, because it is never necessary to anticipate a defense. *New Haven Trust Co.* v. *Nelson,* 73 Conn. 477, 47 Atl. 753. Moreover, it appears in the complaint that the fraudulent acts set out as the ground of action took place within six years of the beginning of the suit. The record further discloses that during the trial all evidence offered to show the acts and conduct of the defendants, or any of them, which are described in the expunged parts of the complaint, was admitted, together with all evidence tending to prove the "course of conduct" of any of the defendants at any time in fraudulently transferring and concealing the bankrupt defendant's property from his creditors. Therefore the granting of the motion to expunge was not only not erroneous, but was not harmful to the plaintiff.

In their answer the defendants denied the remaining allegations of the complaint in each action, and for a special defense set up that the right of action stated did not accrue within six years before the commencement of the suit. This assertion the plaintiff denied in each case. Then by consent of the parties all of the seven cases were placed on the jury list for the trial of all issues of fact. Thereafter, one of them was tried by the jury, and on their answers to interrogatories concerning issues raised by the pleadings and their verdict thereon, the court directed judgment to be entered for the defendants. From this judgment no appeal has been taken, but thereupon the defendants filed a third defense in the six remaining cases in the

nature of a plea of *res adjudicata*, asserting that the issues in these untried actions are the same as those raised by the interrogatories answered by the jury in the action tried and decided. This the plaintiff denied in his reply, and moved that the six remaining cases be struck from the jury docket and placed on the court list, and that the issues raised by the third defense be tried first. The court granted this motion, heard the parties on these issues, and found them in favor of the plaintiff.

Thereafter one of these cases, number 12261 on the court docket, was assigned for hearing by the court without objection by any party, and it was then agreed by counsel for all parties that the evidence produced during its trial, which covered the course of conduct of the defendant Walter H. Bradley, in his financial transactions with the other defendants from about the year 1900 to the date of his bankruptcy in 1915, should be used by the court in deciding also the other untried cases. This the trial court has done and has found all the issues in each of the six cases for the defendants.

Among the issues so found was the one raised in the second defense setting up the statute of limitations. The appellant now claims that this part of the judgment is not supported by the pleadings and facts proved, and is erroneous. It seems to have been inadvertently included in the statement of its decision made by the trial court because, in the mass of evidence and multitude of technical claims and contentions, the court in the end lost sight of an issue which evidently was not seriously presented by any party and was not essential to the determination made and declared. It did not injuriously affect the appellant, because the record plainly reveals that the judgment rendered was founded on other grounds, and if those were legal and substantial, the judgment will stand on them.

In its finding the trial court distinctly states: "81. The defendant Walter H. Bradley did not with intent and effort to hinder, delay or defraud his creditors, conspire with any of the other defendants to transfer, convey or conceal his property as alleged in said complaints. 82. None of the defendants ever connived with or assisted the defendant Walter H. Bradley to conceal from his creditors his property as alleged in said complaints. 83. None of the property involved in any of these cases, was with fraudulent intent or without consideration taken in the name of the other defendants, or friends and business associates of the defendant Walter H. Bradley. 84. None of the property referred to in the said complaints and sought to be recovered belonged to said Walter H. Bradley at the time of his adjudication as a bankrupt."

These facts overthrow the foundations of these actions. While they remain in the finding, manifestly the judgments of the court cannot be successfully attacked. It is not remarkable, therefore, that the appellant, apparently realizing this effect, asks to have them struck from the finding. The reasons he gives are that these facts "are found contrary to the evidence and without evidence." Whether they were found "contrary to the evidence," is not for this court to decide.

The appellant skillfully selects and marshals parts of the evidence to support his positions in relation to the transactions which he claims were fraudulent, asks this court to note the character of the explanations and verbal statements made by the defendants concerning them, and insists that, taking all the facts together, "the conclusion of a conspiracy to defraud is irresistible" and that "he has established his case beyond a reasonable doubt." His counsel assert in their brief that they "can demonstrate the impossibility

of the truth of the . . . findings" of the court, and complain that the court refused to find facts in accordance with the testimony of certain witnesses. In reality they request this court to try the questions of fact raised in these cases, take the plaintiff's view of the evidence, and approve his inferences. We can only repeat what this court has often said respecting such requests: that it is within the province of the trial court only to determine, on conflicting evidence, what the facts are, and if its inferences and conclusions from the facts were made logically, reasonably and in accordance with the principles of law, they are final. In *Hourigan* v. *Norwich,* 77 Conn. 358, 368, 59 Atl. 487, it is declared that "the law on this subject is settled, and there is no excuse for burdening the record with such useless assignments of error and claims, especially in view of the restatement of the law in very recent decisions"; and many cases are cited which were reported before 1904. Since then this court has been called on to state this law again. *Johnson* v. *Shuford,* 91 Conn. 1, 6, 98 Atl. 333; *Bell* v. *Strong,* 96 Conn. 12, 112 Atl. 645; *Hayward* v. *Plant,* 98 Conn. 374, 379, 119 Atl. 341. From an examination of the entire record presented in the cases now before us, it does not appear that the finding does not properly present the facts, or that any material fact was found without evidence, or that any admitted or undisputed fact has been omitted. On the contrary, it appears that there was evidence before the trial court from which the findings of material facts could be logically and legally made, and that the purport of the evidence was not misapprehended nor misapplied in any particular. Any judge, passing upon the credibility and weighing the testimony of the witnesses, which relates to transactions which occurred during more than twenty years, and applying their testimony to the complex

and unusual claims of the parties, might reasonably reach the conclusions of which the appellant complains. Some of the testimony may seem to be dubious or contradictory, or ambiguous and confusing, or capable of another construction and other inferences than those which the court below has made. But such reasons, if they should be discovered, would not warrant the correction of the finding. It must appear that no evidence supports the conclusions. *Eudakaitis* v. *St. George's Lithuanian Soc.,* 87 Conn. 1, 86 Atl. 562; *Stoughton* v. *Hartford,* 85 Conn. 674, 84 Atl. 95; *Hine* v. *McNerney,* 97 Conn. 308, 311, 116 Atl. 610. The record does not disclose that these conclusions are contrary to or unsupported by the subordinate facts found, including those stated in the paragraphs of the draft-finding which are marked "proven." *Eastern Burlap Bag Co.* v. *Shay Fertilizer Co.,* 96 Conn. 139, 113 Atl. 151. We discover no reason to correct the findings of the trial court by striking out any material facts thereof. It may be that certain minor subordinate facts might have been omitted, but none of them is essential to the conclusions made by the court, and neither their presence nor their absence would affect the basis upon which the judgment was placed.

The appellant assigns as error the refusal of the trial court to add to its finding the matters contained in specified paragraphs of the plaintiff's draft-finding which were marked "not proven," and also certain matters not contained in his draft-finding, "all of which," he asserts, "were supported by the evidence." Here again we are impelled to repeat that it is within the province of the trial court alone to determine what matters were supported by evidence and thereby established as facts. There was no error in the refusal of the trial court to add to its finding matters which it had already decided had not been proved.

In several assignments of error the appellant complains that the court below erred in overruling his claims of law. Each of these claims he has based on an assumption that certain matters were facts which the trial court did not find to have been proved; for instance, he assumes that while Walter H. Bradley was in debt and had no substantial property, he conveyed property to others without consideration; that the evidence showed Bradley's fraudulent intent as a matter of law; that a conspiracy to defraud was proved; and that the facts in evidence imported fraud in law. The record shows that the court below did not strictly overrule these claims; but that it rendered its judgment notwithstanding them. Since it did not find the facts to which the law stated by the appellant was applicable, it could not logically follow any other course.

In the beginning of the trial, the plaintiff offered court records to prove that the receivers of the Bradley Salt Company had recovered judgment against Walter H. Bradley, a defendant in these suits, in the Supreme Court of the State of New York, which they had assigned to Peter B. and Robert S. Bradley, and upon which the latter had brought suit and recovered judgment against Walter H. Bradley in the Superior Court of this State. This judgment appeared as a debt due to Peter B. and Robert S. Bradley from Walter H. Bradley in the schedule filed in his bankruptcy proceedings. These court records were admitted to show the existence, the amount and the date of this debt. Later in the course of the trial, Anna M. Bradley, the wife of the defendant Walter H. Bradley, was called as a witness by the plaintiff, and in her examination by his counsel she testified that in 1896, her husband had made her a gift of a certificate for two hundred and ninety-five shares of the stock

of the Bradley Salt Company, which was then worth not more than $10,000; that in 1899 she surrendered this certificate and received for it a check for $25,000, and some stock of the National Salt Company which she sold; that in all she received about $75,000 for her two hundred and ninety-five shares of the stock of the Bradley Salt Company; and that some years later, when she desired to have possession again of this stock certificate to use in another suit, she employed a lawyer who obtained it from the files of the National Salt Company and returned it to her. Subsequently in the same examination, the plaintiff's counsel asked this witness if she did not know that the check for $25,000 and the National Salt Company stock which she had received, as she had stated, were part of some bonus given to her husband for something he was doing; and she answered that she did not know that, and would not say that; and she repeated her assertion that the money and stock she had received were paid to her on account of the certificate of stock of the Bradley Salt Company. Apparently it was not disputed that the witness received that check and some stock of the National Salt Company, nor that she obtained about $75,000 from the transaction. The trial court admitted the foregoing questions and answers relating to these matters to throw light upon the testimony of the witness regarding merely the source from which she derived this money. Thereupon the plaintiff's counsel again offered in evidence the exemplified copy of the judgment and record in the Supreme Court for the State of New York in which the receivers of the Bradley Salt Company obtained a decree, entered January 11th, 1904, declaring that Walter H. Bradley had received, "as of January 1, 1904," $18,837.39, over and above his share of all of the distributable assets

of that company, and directing and requiring him to pay over to the receivers on demand this excess received by him. This record was claimed as evidence "for the purpose of showing exactly what happened in the winding up of the Bradley Salt Company, who owned the stock, what was paid for it, . . . and who got the money," with the object of showing that the statement of Anna M. Bradley that she received about $75,000, as the owner of and on the surrender of her certificate for two hundred and ninety-five shares which her husband had given to her, had no foundation in fact. The trial court excluded the document for such purposes, suggesting that the judgment record might, if Walter H. Bradley should be a witness, be used as a basis for questions to him and then become admissible in part. Thereafter the plaintiff called Bradley to the witness stand, and the finding states that after he "had given his version of the transactions which terminated in the judgment referred to," and after it had appeared that the plaintiff had made fruitless efforts to obtain the records of the National Salt Company, the plaintiff again offered the judgment record of the New York court to prove the facts set forth therein for the purpose of contradicting the testimony of both Mr. and Mrs. Bradley. The finding does not state specifically in this connection what testimony Bradley gave in "his version of the transactions which terminated in the judgment," but we discover in the draft-finding, in the finding, and in the evidence printed in the record to support the appellant's requests for changes in the finding, that his testimony was in substance and in most details the same as that given by his wife. The material pertinent facts which were stated by both witnesses were that in January, 1896, when Bradley was free from debt and owned property worth about $300,000,

he made his wife a gift of a certificate for two hundred and ninety-five shares of the stock of the Bradley Salt Company, properly endorsed by him; that she kept possession of this certificate and no transfer of the stock to her was recorded on the books of the company, but for voting purposes it was permitted to continue to stand in Bradley's name with other stock of his; that in January, 1899, the Bradley Salt Company sold all its property and business to the National Salt Company for $650,000; that at that time, Bradley was the holder on record of four hundred and forty-nine shares, or nearly one third of the total capital stock outstanding; that all his certificates, together with all certificates of other stockholders, were deposited with a bank named as the depositary of certificates of stock of the Bradley Salt Company in its contract of sale to the National Salt Company; that after the surrender of these certificates, Bradley received therefor $25,000 by a check and $100,000 in stock of the National Salt Company, and that he turned over the check to his wife and about $50,000 of the stock, as a part of her share of the proceeds of the sale as measured by the number of shares represented by her certificate of stock of the Bradley Salt Company which he had given to her. No evidence was presented directly to contradict these facts. The plaintiff did not at any time point out any finding in the judgment and record of the New York court which is not consistent with these facts. That part of this judgment which was read when it was first offered as evidence declares that Bradley, before January 1st, 1904, had received more than his share of the distributable assets of the Bradley Salt Company, which seems to confirm Bradley's statement that in 1899 he had received at least a part of his share of the proceeds of the sale to the National Salt Company. In the subsequent

examination of Bradley as his witness, plaintiff's counsel read to him, under the pretence of refreshing his memory, the substance of nearly all of the findings recited in this judgment; and among them appears the statement that Bradley had in fact received four hundred and forty shares of the stock of the National Salt Company and collected dividends on them, and also the cash by check for $25,000 which he and his wife had mentioned in their testimony. The plaintiff repeatedly calls attention to the statement in the judgment that Bradley was the owner or holder of four hundred and forty-nine shares of the stock of the Bradley Salt Company at the time its receivers were appointed. This statement, properly interpreted, does not conflict with the statement of these witnesses. The list of stockholders of this company which is set out in this judgment evidently purports to contain the names of all persons who were stockholders on record at the time of the sale of its property and business to the National Salt Company in 1899. No one disputed that that list was correct, nor that at that time all stockholders surrendered their stock to the depositary named to carry out the transfer of the assets of the Bradley Salt Company. It was the business of the New York receivers to collect and disburse those assets among those who were stockholders of record at that time. These are called in the New York judgment "distributable assets." Manifestly the share to be given to each stockholder must be fixed by the number of shares he appeared to hold at that time, and that number would be determined in those proceedings by the company's record of stockholders as it was then. The New York court had no reason nor occasion to look behind or beyond that record. That court was not called on and did not undertake to determine

the ownership of stock which had been sold or pledged or given away by delivery of a certificate, unless a transfer or memorandum of some kind was made on the company's books.   Apparently no entries were made in the books of this corporation after its activities ceased in 1899.   The finding that Bradley was then the owner as well as the holder of four hundred and forty-nine shares of stock was not binding on his wife or any other bona fide owner of any of those shares with respect to the future division and disposition of his portion of the distributable assets. The vital questions before the trial court in the present action were whether the two hundred and ninety-five shares of stock were given, and the proceeds therefrom were conveyed, by Bradley to his wife with intent to defraud the creditors represented by the plaintiff trustee in bankruptcy.   To settle these questions the trial court might, as it declared it would, give due consideration to the fact that they allowed this stock to remain in Bradley's name on the books of the corporation from 1896 to 1899.   This fact was admitted by both witnesses at the outset, and an explanation was offered by Bradley.   That explanation on its face was reasonable and suggested no unusual conduct, much less a fraudulent intent.   The findings of the New York court only corroborated that admission; but it contained no evidence which affected the explanation. The complaint presented the allegation that the bankrupt and his wife had been pursuing a course of conduct of transferring and concealing his property from his creditors since about the year 1900.   But it was conceded that this stock was given to Mrs. Bradley four years before that year.   If the gift was valid when it was made in 1896, the title to the stock and to any proceeds from it vested in her then.   After that time, neither the stock nor the receipts from it were the

property of the bankrupt. This transaction took place long before the beginning of the fraudulent conduct set out as the basis of any action. In none of these cases is this gift of Bradley to his wife directly attacked, nor does the plaintiff seek to recover this stock or any proceeds from it. In our opinion, therefore, in such circumstances, the exclusion of the record of the New York judgment was proper, and when the court allowed the plaintiff's counsel indirectly to introduce the principal parts of it in his examination of the defendant Bradley and considered any bearing the contents thus disclosed might have upon the ownership of these shares of stock, it gave to the plaintiff greater indulgence than he was fairly entitled to. Hence his assignments of error in the rulings relating to this subject are not well founded.

The defendants objected to the admission of the New York record and judgment in evidence because none of the parties to any of these actions, except Bradley, was a party to the New York action. That would seem to be a sufficient objection. The New York proceedings concerned no matters but the winding up of the Bradley Salt Company and the distribution of its assets among its stockholders in proportion to their recorded holdings at the time when it sold out its business. The findings and decree settled the rights and obligations of the receivers and Bradley only. The right or duty of Bradley to pay to Mrs. Bradley, and the right of Mrs. Bradley to take from him a part of the assets which Bradley was found to have received, was not put in issue in that action nor involved in the judgment. She was not bound in any way by the finding that Bradley was the owner of record of stock a part of which in fact belonged to her. Manifestly the other defendants in these suits were not concerned nor bound. Hence the New

York proceedings were not admissible against any of them, and therefore they were not admissible at all, because the gist of the actions is their connivance and assistance, or conspiracy, as it was termed, with Bradley in his course of fraudulent conduct. This became evident when the evidence was first offered and the part which contained the final decree against Bradley was read. Afterward there was no good reason persistently to offer this evidence which, correctly understood, was rather helpful than harmful to the defendants Bradley and his wife, and the exclusion of which, in the record form in which it was presented, caused the plaintiff no injury of which he may justly complain. By his own witnesses, he had produced evidence of two facts: (1) that in 1896 Bradley had made a gift to his wife of a certificate representing two hundred and ninety-five shares of stock; (2) that early in 1899, upon her surrender of that certificate to assist him in executing a transaction which he had planned, he gave her about $75,000 from the proceeds of that transaction. Neither of these facts is material or relevant to any issue raised in any of the present suits, in each of which the cause of action rests upon the alleged course of conduct of the defendants since about the year 1900. These actions were brought by a trustee in bankruptcy appointed in 1915. It is not set forth and does not appear that any of the creditors whom he represents, or any other person, was a creditor before the year 1900, when the dealings with this stock took place. While the plaintiff was not bound by the testimony of his own witnesses relating to matters material or relevant to the issues raised in his suit, but might prove that a fact was otherwise then they had stated, he might not contradict their testimony relating to a matter collateral or immaterial to the issues he has presented for trial, merely for the purpose

of impeaching the witnesses and diminishing the weight of the testimony he had invited them to give. *Carpenter's Appeal*, 74 Conn. 431, 435, 51 Atl. 126; *Barlow Bros. Co.* v. *Parsons*, 73 Conn. 696, 702, 49 Atl. 205; 2 Wigmore on Evidence (2d Ed.) §§ 1000, 1001, 1002; 40 Cyc. 2769. But the admission or exclusion should ordinarily be left to the discretion of the trial court. *Carpenter's Appeal, supra;* 2 Wigmore on Evidence (2d Ed.) § 1003; 40 Cyc. 2782. In these cases, moreover, as we have said, the plaintiff has not indicated any part of the record and judgment of the New York court which, upon fair and reasonable examination and interpretation, appears to contradict any statement made by either of these witnesses respecting their dealings with the stock of the Bradley Salt Company. For the reasons given, we think the trial court made no error in excluding this evidence in the form and for the purposes for which it was offered and to the extent of its rulings.

The plaintiff offered in evidence the testimony of William J. Robinson, for the declared purpose of showing that certain stock which had been transferred to the defendant Walter H. Bradley as trustee for his minor daughters, was transferred "as a blind or cover" and without consideration. One of the present suits was brought to recover this stock, which was alleged to be really the property of the bankrupt Bradley, but now in the possession of the defendant Anna M. Bradley and held as the property of the minor daughters. The finding states that this testimony had been given by Robinson, who had since died, "upon the general examination of the defendant Walter H. Bradley in bankruptcy before the referee in bankruptcy." What the subject or object of this examination was is not stated, nor does it appear that any notice was given to anyone respecting the matters concerning

which the examination would be held. The fact that Robinson gave his testimony during this examination indicates that it was one authorized and conducted under § 21a of the Bankruptcy Act of 1898, which provides that a bankruptcy court may "require any designated person" to appear before a referee "to be examined concerning the acts, conduct, or property of a bankrupt." But the record does not show that before this testimony was taken, anyone concerned was informed by any petition or notice or citation to appear, or in any manner, that any particular acts, conduct or property of the bankrupt were to be inquired into, nor that any issue was defined in any way or at any time, nor that the plaintiff undertook to prove that notice of any kind was given to the bankrupt or to any other defendant interested in the ownership of this stock that any claim was in issue or was to be made in this examination, or any testimony taken, which would affect the ownership of this stock and possibly deprive the minor daughters of property which they claimed to. honestly own. The trial court in its finding expresses its conception of the proceeding in which it was claimed this testimony was taken, by the term "general examination" of the bankrupt. Such an examination is "in the nature of an inquisition," in which the broadest latitude is allowed the examiner, and wherein the referee is required to take down and enter in the record all testimony offered, even though important portions of it may afterward be excluded by a reviewing judge. 1 Collier on Bankruptcy (13th Ed.) pp. 370–372, 715, 720. The object of such an examination of the bankrupt and other witnesses is to discover the condition, extent and whereabouts of the bankrupt's property, and any circumstances which may be important in the administration of his estate. *Ulmer* v. *United States*, 219 Fed. Rep.

641, 34 Am. B. R. 143; *In re Weidenfeld,* 254 Fed. Rep. 677, 42 Am. B. R. 425. Upon such an examination, it is not the purpose and not within the power of the referee, or of a judge on a review of the proceedings, to settle facts and determine disputed rights and title to property; but the material facts which may be uncovered in such an examination must be used for that purpose, if at all, in a suitable action in court. An eminent jurist has called these examinations "roving attempts at discovery" and "fishing excursions." *Shipman, J.,* Circuit Court of Appeals; *In re Wilcox,* 109 Fed. Rep. 628, 6 Am. B. R. 362. While the testimony of the bankrupt taken in such an examination, like any other admission made by him, may be used in subsequent proceedings involving relevant matters, the testimony of another person has been held inadmissible in later hearings and proceedings in the bankruptcy courts. The reasons were forcibly expressed by Judge Shipman in the case last cited: "The testimony of third persons upon these roving attempts at discovery is not directed to a defined issue, and therefore the rules of evidence are not carefully applied, and testimony is liable to be given which is not carefully guarded, and may be unconsciously derived from hearsay. Inasmuch as no issue has been framed, the bankrupt or his counsel cannot always perceive the inferences which may be drawn from the testimony, and therefore will not produce rebutting facts. The danger in using the information which has been thus gathered in one of these 'fishing excursions' as testimony upon which a court can rely in an issue between the bankrupt and his creditors is such as to render its admission inexpedient. It is liable to produce an injustice, and the testimony may, therefore, be regarded as inadmissible." This reasoning was applied in a case

concerning a bankrupt's discharge. It has been followed in proceedings to compel payment of money alleged to belong to a bankrupt estate, to compel a bankrupt to turn over alleged exempt property, and to the exclusion of testimony of an outside witness given on a general examination and not directed to a defined issue. These rulings have been made notwithstanding the fact that the witnesses were cross-examined. 1 Collier on Bankruptcy (13th Ed.) p. 725. The most serious and sufficient objection to the admissibility of such evidence is not the lack of opportunity for cross-examination, but that examinations of this kind are not confined to well-defined issues, properly made known to the persons concerned, with opportunity given to present evidence and be heard on questions of fact or law which will be raised or involved in the investigation. In such conditions the rules of evidence cannot be carefully applied, and the proceedings lack in these particulars the elements of the due process of law by which only may a person be deprived of his property. In case of *In re Durant,* 80 Conn. 140, 67 Atl. 497, which the appellant urges upon our attention, the court neither followed nor suggested a different principle. The testimony objected to in the disbarment proceedings was testimony given before a committee of the Superior Court appointed to hear the evidence and report the facts relating to the issues raised by the pleadings in a pending case. Those issues were substantially the same in both actions. In both they were clearly defined before trial. The topics which were the subjects of examination, so far as they were related in the testimony objected to in the disbarment proceedings, were the same as those under examination in the later proceedings, and the evidence had the same bearing upon and important relation to the issues first made in the case

in which the evidence was produced and afterward made in the disbarment proceedings. This court said of such conditions: "The requirement of an identity of parties is only a means to an end. This end was attained when the defendant availed himself of the unrestricted opportunity to cross-examine Mrs. Delkescamp. He was then fully aware of the importance to him in his professional capacity of her damaging disclosures. He had been forewarned of what might be expected from her, that her assertions might furnish the basis for disbarment proceedings against him, and had had ample opportunity to prepare to put her statements to the test of such an examination as he might think desirable. Under such conditions, to now say that the tests which the law prescribes for his protection against the witness' then assertions, were not, for the purposes of such a disciplinary proceeding as that before us, fully satisfied, would be to dispense with common sense in the application of the rule invoked, and to lose sight of its spirit and purpose in a blind adherence to the letter of some attempted expression of it." It is manifest that in the *Durant* case the evidence was admitted because it had previously been given upon predetermined issues, of which the party interested had warning and knowledge beforehand, and had had ample opportunity to put the evidence to such test as he might think best to apply. These essential conditions do not appear in the present case, which in these respects resemble closely the cases in the United States courts which we have cited, and the principles which were decisive in those cases we believe are equally applicable and effective in these. The trial court did not err in excluding this testimony in the circumstances in which it was offered in any instance.

The defendants have filed a bill of exceptions on

the ground that the trial court erred in striking these cases from the jury docket and trying them before the court. The record reveals that no objection to this procedure was made by any party, but, on the contrary, that the trial of the six cases by the court was under agreement of all parties. There is no foundation for the bill of exceptions.

There is no error.

In this opinion the other judges concurred.