## ROBERT PLAWECKI ET AL. *v.* ANGELO TOMASSO, INC.
## (2300)

TESTO, HULL and BORDEN, Js.

Argued October 5—decision released November 29, 1983

*James M. Marinelli,* with whom was *Wesley W. Horton,* for the appellant (named plaintiff).

*Harry N. Jackaway,* with whom, on the brief, was *Charles W. Bauer,* for the appellee (defendant).

BORDEN, J. In this negligence action, the plaintiff injured his foot in 1973 while operating a three-wheeled roller supplied by the defendant to his employer, Laviero Construction Company, Inc.[1] The plaintiff sued the defendant, claiming that the roller was missing a

---

[1] The employer also was an intervening co-plaintiff under the Workers' Compensation Act. It did not join in this appeal. For convenience, we refer herein to the named plaintiff employee as the plaintiff.

guard. In addition to special defenses of contributory negligence and settlement of the claim by the plaintiff, the defendant filed a special defense of gratuitous bailment of the roller which, if proven, would reduce the standard of care required of the defendant. See Wright & Fitzgerald, Conn. Law of Torts (2d Ed.) § 80, p. 158. From a judgment rendered on a defendant's verdict the plaintiff appeals,[2] raising essentially three issues, only two of which we need discuss.

## I

The plaintiff first claims that the trial court erred in precluding him from impeaching his employer's principal, Daniel Laviero, whom he had called as a witness, by use of a prior inconsistent statement. Laviero testified on direct examination by the plaintiff that, because of friendship between his father and the founder of the defendant, he did not pay the defendant for use of the equipment. The plaintiff then attempted to impeach Laviero on the basis of a prior written statement in which he acknowledged financial considerations between him and the defendant for use of the machine. Laviero had given a deposition in which he had disavowed the statement, claiming that he misunderstood it. The court sustained the defendant's objection.[3]

It is clear from the record that the basis of the trial court's ruling was the holding of *State* v. *Mitchell,* 169 Conn. 161, 362 A.2d 808 (1975). The plaintiff's claim,

[2] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[3] The defendant argues that the ruling is not reviewable on appeal because the plaintiff failed to mark the statement as an exhibit for identification. While ordinarily such a failure will preclude appeal; see *Carpenter* v. *Carpenter,* 188 Conn. 736, 745, 453 A.2d 1151 (1982); and while ordinarily we do not countenance such a procedure, under the circumstances of this case we will review the ruling. The trial court examined the statement and found it "clearly inconsistent" with Laviero's prior testimony; the plaintiff made an offer of proof outside the jury's presence that Laviero had made similar oral inconsistent statements; the trial court referred, in its

relying on *State* v. *Roberson,* 173 Conn. 97, 376 A.2d 1089 (1977), and *Liebman* v. *Society of Our Lady of Mount St. Carmel, Inc.,* 151 Conn. 582, 200 A.2d 721 (1964), requires us to confront two lines of Supreme Court authority which are divergent in approach and result.

The first line has as two of its points *Gondek* v. *Pliska,* 135 Conn. 610, 67 A.2d 552 (1949), and *State* v. *Mitchell,* supra. In *Gondek* the court upheld the trial court's exercise of discretion in disallowing impeachment where no surprise was shown. *Gondek* v. *Pliska,* supra, 616. The court noted, nonetheless, that "[s]ince counsel had learned before calling the witness that her testimony would differ from her statements, the court acted *within its discretion* in disallowing cross-examination on the ground of surprise. Such examination is a privilege which may arise where hostility, surprise or deceit is disclosed." (Emphasis added.) Id. Thus, although the case can be read as holding that surprise is one of the sine qua nons, along with hostility and deceit, of permitting such cross-examination, its language left room for doubt. That doubt appeared to have been dispelled by *State* v. *Mitchell,* supra, in which the Supreme Court reversed the trial court's exercise of its discretion in permitting cross-examination of the state's own witness by use of a prior inconsistent statement because surprise was lacking. "The state was aware, in advance of trial, that this would be her testimony. The element of surprise is clearly lacking in this instance *and that element must be demonstrated prior to any attempt to impeach ones own witness' testimony.*" (Emphasis added.) Id., 165. The clear teaching of

memorandum of decision on the plaintiff's motion to set aside the verdict, to the statement as inconsistent; and the defendant does not suggest here that it was not inconsistent. Since the purpose of marking such an exhibit is to provide a basis for appellate review; *Carpenter* v. *Carpenter,* supra; we find an adequate substitute in the record for the statement, notwithstanding the fact that it was not marked as an exhibit for identification.

*Mitchell* was, then, that surprise is a necessary trigger to the exercise of the court's discretion as to whether or not to permit such impeachment.

Meanwhile, the second line of cases was proceeding apace. In *Liebman* v. *Society of Our Lady of Mount St. Carmel, Inc.,* supra, the court upheld the trial court's exercise of discretion in permitting impeachment by a prior inconsistent statement even in the absence of surprise. It stated the rationale for the rule as follows: "Although counsel may have good ground for believing that a witness intends to testify in a manner contrary to a statement he has previously given, counsel may still call the witness to the stand under the belief that, when confronted by the prior statement, the witness will abandon efforts to deviate materially therefrom. *Carpenter's Appeal,* [74 Conn. 431, 435, 51 A. 126 (1902)]. Under such circumstances, if the witness fails to testify in substantial accord with his prior statement, the court has discretion to permit the admission of the inconsistent statement, even though surprise, in the full sense of the word, is lacking." Id., 589. Both the holding and rationale of *Liebman* were reaffirmed in *State* v. *Roberson,* supra, in which the court upheld the trial court's exercise of discretion in permitting impeachment even though the state, which had put the witness on the stand, had advance knowledge that he might testify contrary to his earlier statements. *State* v. *Roberson,* supra, 100. Thus, *Liebman* and *Roberson* stand for the proposition that surprise need not be shown in order for the court to exercise its discretion as to whether to permit impeachment of one's own witness by a prior inconsistent statement.

Faced with this divergence, we believe that *Roberson* represents the law of this state. First, it is the latest Supreme Court pronouncement on the issue.[4] Second,

---

[4] *State* v. *Roberson,* 173 Conn. 97, 376 A.2d 1089 (1977), neither cited nor attempted to distinguish *State* v. *Mitchell,* 169 Conn. 161, 362 A.2d

we find its rationale more persuasive than that of *Gondek* and *Mitchell,* which rest more rigidly on the outmoded notion that a proponent of a witness vouches for his credibility. See 3A Wigmore, Evidence (Chadbourn Rev. 1970) §§ 896 through 899.[5] Third, it more closely adheres to the earlier, flexible formulation of the rule, vesting discretion in the trial court to permit impeachment "as the interests of justice under the particular circumstances of the case seem to the court to require." *Schmeltz* v. *Tracy,* 119 Conn. 492, 498, 177, A. 520 (1935), which was quoted at further length with apparent approval in *State* v. *Mitchell,* supra, 165; see *Carpenter's Appeal,* 74 Conn. 431, 435–36, 51 A. 126 (1902).

Had the trial court here, having found no surprise, exercised its discretion to prohibit the impeachment, our task would be at an end, because such impeachment is a privilege, not a right, "and error cannot be predicated upon its refusal. *Sandora* v. *Times Co.,* 113 Conn. 574, 585, 155 A. 819 [1931]; *Carpenter's Appeal,* 74 Conn. 431, 436, 51 A. 126 [1902]." *Gondek* v. *Pliska,* supra, 616–17. We are convinced from the record, however, that the basis of its ruling was that, in the absence of surprise, it had no discretion under *State* v. *Mitchell,* supra, to permit the impeachment. Its choice was not the singular one of sustaining the objection because of lack of surprise; it was the dual one of whether or not, in its discretion, to permit impeachment even in the absence of surprise. Thus, it committed error in employing an improper legal standard in making its ruling.

808 (1975), decided only two years earlier. Similarly, *Mitchell* neither cited nor attempted to distinguish *Liebman* v. *Society of Our Lady of Mount St. Carmel, Inc.,* 151 Conn. 582, 200 A.2d 721 (1964), decided eleven years earlier.

[5] In view of this ruling, we decline the plaintiff's invitation to venture into uncharted waters as an intermediate appellate court and to abandon entirely the rule against impeaching one's own witness, particularly in view of recent Supreme Court reaffirmation of the rule. See *State* v. *Harris,* 182 Conn. 220, 438 A.2d 38 (1980).

## II

Although the evidentiary ruling is dispositive and will require a new trial, we discuss the plaintiff's second ground of appeal because it is likely to arise again. The plaintiff claims error in the court's refusal to charge the jury on the issue of strict products liability.[6] We disagree.

The complaint was based on negligence and did not, even liberally construed, support a claim of strict products liability. It neither alleged that the defendant was engaged in the business of supplying three-wheeled rollers nor that the roller was expected to and did reach the user without substantial change in the condition in which it was supplied. See *Prokolkin* v. *General Motors Corporation,* 170 Conn. 289, 299, 365 A.2d 1180 (1976). The plaintiff's attempt to glean from the complaint essential allegations which are lacking is without merit. Nor is this a case, as the plaintiff claims, of "slight linguistic ambiguity" being fatal to a cause of action. Cf. *Schenck* v. *Pelkey,* 176 Conn. 245, 255, 405 A.2d 665 (1978). This conclusion also disposes of the plaintiff's argument that Public Acts, 1979, No. 79-483, now General Statutes §§ 52-572m through 52-572r, required the court to charge on strict products liability. We need not decide whether that statute could apply to this claim, which arose before its effective date, because of its requirement that the "[p]roduct seller" be one who, in the case of a lease or bailment, be

---

[6] Although in his statement of issues under Practice Book § 3012 and in his statement of issues in his brief the plaintiff refers to the court's denial of his motion to amend his complaint, the body of the brief on this part of the case does no more than to mention, without more, the fact of denial and then goes on to discuss the issue of whether the original complaint supported a charge on products liability. Under these circumstances we consider the issue of denial of his motion abandoned. *Pastir* v. *Bielski,* 174 Conn. 193, 384 A.2d 367 (1978).

"engaged in the business of leasing or bailment of products." General Statutes § 52-572m (a). The complaint contained no such allegation.

We need not discuss the plaintiff's third ground of appeal, which arises from inclusion in the case of the issue of settlement of his claim, raised by the defendant's third special defense. The trial court refused to permit the jury to consider this defense because of insufficiency of evidence. It does not appear, in view of the evidence available, that this issue will arise in a new trial.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.