MARJORIE F. SCHMELTZ, GUARDIAN, *vs.* DWIGHT W. TRACY.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued January 2d—decided March 5th, 1935.

*John A. Danaher,* for the appellant (plaintiff).

*Cyril Coleman,* with whom, on the brief, was *Lawrence A. Howard,* for the appellee (defendant).

HAINES, J.   The defendant, a physician and surgeon in Hartford specializing in dermatology, was consulted by the plaintiff in the fall of 1931 in regard to a skin ailment of her minor daughter which was diagnosed by the defendant as acne.   The first four paragraphs of the first count of the complaint allege a contract with the defendant for the treatment of the acne, but there is no further reference to this contract anywhere in the complaint, and the court correctly told the jury, "there is now no claim before you as to any lack of treatment in regard to the acne."   The remainder of the first count alleges the negligent removal of several moles from the face of the girl, with resulting injuries to her.   The second count alleges that these same moles were removed by the defendant without and against the consent of the plaintiff or of the girl and with like resulting injuries.

The court directed the jury to disregard the first count for the reason that no proof of negligence had been made, and this is assigned as error. Before correction by the court, it appeared from the finding that the plaintiff offered evidence to prove and claimed to have proved that the girl's skin was of a type which scarred easily; that the defendant knew or should have known this, and that conservative practice required that, under such circumstances, one mole should first be removed and the result awaited before removing others. Later, however, the court struck out this finding as to the susceptibility of the girl's skin and the defendant's knowledge of it. This latter action of the court is also assigned as error, but the evidence of record sustains the court, and there is now nothing in the finding to show that the court was in error in instructing the jury to disregard the first count based on negligence.

Relying upon seven paragraphs of the charge which are assigned as error, the plaintiff contends that the court misconceived the nature of the second count and inadequately and incorrectly charged the jury thereon. The jury were reminded that there was a flat contradiction in the evidence as to whether consent to the operation was given, and were told that that was the precise question for them to decide since the plaintiff and the girl had the right to be consulted before the moles were removed. After some further comments the court said: "If you find that the defendant removed these moles without the permission of the plaintiff and her mother or either of them, then you will come to the consideration of the effect of that removal. Just what difference in the situation did that cause? What was the altered condition of the girl Colette? She had a right, of course, to go on bearing her countenance just as it was if she wished, and if,

through the action of the defendant in doing something which he had no permission to do she sustained injury and damage, she is entitled to fair compensation which will put her as nearly as you can by your verdict in the position in which she was originally. So you see how essential it is for you to determine in the first place what her condition and position was before she was operated upon. . . . Now it must appear also, if you are going to award the plaintiff damages, that not only was her injury due to the act of the defendant in operating upon her without her permission, but that the action of the defendant or operation by him was the proximate cause of the injury to the plaintiff." Later in the charge the court also said: "The precise claim before you is as to whether or not there was consent or permission given, . . . whether or not an injurious result flowed from that and whether or not the injurious result, if you find there was such, was occasioned by the actions of the defendant or whether there was this intervening cause of the interference of the plaintiff," referring to the defendant's claim that the scarring was caused by the picking of the scabs by the girl, contrary to his orders. Finally, the jury were told that if they found that the injuries alleged did result from the act of the defendant and that the defendant acted without consent and permission, then they should give compensation.

From these instructions the jury must have understood that they could not give a verdict for the plaintiff unless both the lack of consent and the damages which were alleged, were established. This was erroneous, for if the lack of consent was established, the removal of the moles was in itself a trespass and had the legal result of an assault. "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon

who performs an operation without his patient's consent, commits an assault, for which he is liable in damages." *Schloendorff* v. *New York Hospital,* 211 N. Y. 125, 129, 105 N. E. 92; *Pratt* v. *Davis,* 224 Ill. 300, 79 N. E. 562; *Mohr* v. *Williams,* 95 Minn. 261, 104 N. W. 12. Even if it be shown that the substantial injuries which the plaintiff suffered are due to her own improper conduct, this is not a defense to a charge of assault; the issue is whether the assault was committed. Proof of the assault entitles the plaintiff to a verdict for at least nominal damages and to such special damages in addition as the plaintiff has alleged, and proved to have proximately resulted from the assault. A violation of a legal right like that alleged in the instant case, imports damage. *Morrow* v. *Ursini,* 96 Conn. 219, 221, 133 Atl. 388; *Brett* v. *Cooney,* 75 Conn. 338, 341, 53 Atl. 729. The failure to instruct the jury in accordance with the above principles was erroneous, but the limit of prejudice which this failure could have caused the plaintiff in any event, was the loss of a verdict for nominal damages and costs, with the latter limited to the amount of the damages. General Statutes, § 5670. We have held that errors having this limited result are not ordinarily reversible. *Cheshire Brass Co.* v. *Wilson,* 86 Conn. 551, 558, 86 Atl. 26; *Ely* v. *Parsons,* 55 Conn. 83, 102, 10 Atl. 499; *Cooke* v. *Barr,* 39 Conn. 296, 306; *Stratford* v. *Fidelity & Casualty Co.,* 106 Conn. 34, 39, 137 Atl. 13; *Cooke* v. *McShane,* 108 Conn. 97, 99, 142 Atl. 460; *Perkins* v. *August,* 109 Conn. 452, 459, 146 Atl. 831; *Went* v. *Schmidt,* 117 Conn. 257, 259, 167 Atl. 721.

We conclude that the rule for the assessment of special damages within the allegations of the complaint, was defined with sufficient clearness and accuracy to enable the jury to act intelligently and correctly upon this feature of the case. The fact that the

court ignored the question of nominal damages, cannot be held to have confused the jury in passing upon this question of special damages, viz.: scars, suffering, etc. Reading the charge as a whole, we believe the jury understood that these damages must be found to be such only as resulted directly from the defendant's unauthorized operation without the intervention of any improper act of the plaintiff's daughter materially contributing thereto. *Morro* v. *Brockett,* 109 Conn. 87, 92, 145 Atl. 659; *Lange* v. *Hoyt,* 114 Conn. 590, 595, 159 Atl. 575.

The plaintiff called Dr. Standish, another dermatologist from Hartford, and examined him, and after he had been cross-examined, the plaintiff sought, on redirect examination, to show that the witness was not disinterested. Upon objection, the jury were excused and the matter was gone into at length before the judge. It was developed that Dr. Standish was a fellow member with the defendant in the Hartford Medical Society and that both doctors practiced as specialists in the same field; that by agreement between counsel, Dr. Standish had, without compensation, treated this girl for several months after the operation in an endeavor to remove the scars, but with little success. It also appeared that in consideration of lowered premiums, payable by each member, a blanket policy of insurance coverage is issued to members. It further appeared that gratuitous treatment of the patient is to be given by a member specialist in the same field, when a member is sued under these circumstances. The doctor also testified in response to questions that there was a committee of the Society charged with the duty of determining whether, in a given case, there had been malpractice. Counsel for the plaintiff felt that Dr. Standish was not a disinterested witness, and these questions sought to de-

velop that fact before the jury apparently for the purpose of weakening the force of his testimony. The court said it could see nothing in the testimony already given by the doctor to bring the offered testimony within any of the exceptions to the general rule that one may not impeach his own witness, and ruled out the evidence.

However strong may be the belief of counsel that his witness is biased, prejudiced or hostile, it is a fundamental requirement of a just and orderly procedure that having called a witness and sought the benefit of his testimony by putting him on the witness stand, though he may contradict him by another witness, he cannot directly impeach him save where it is shown to the satisfaction of the court that the testimony of the witness is a surprise to him, or is inconsistent with other statements made by the witness, that he is adverse or hostile or for some equally potent reason, as the interests of justice under the particular circumstances of the case seem to the court to require. *Olmstead* v. *Winsted Bank,* 32 Conn. 278, 287; *Wheeler* v. *Thomas,* 67 Conn. 577, 580, 35 Atl. 499; *Carpenter's Appeal,* 74 Conn. 431, 435, 51 Atl. 126.

We are unable to find in this record of the testimony of Dr. Standish, as was the trial court, any suggestion of hostility or any unwillingness to answer any of the questions put to him, or anything to justify an exception to the general rule; nor does it appear that the plaintiff was seeking by her second witness to contradict any statement of fact made by Dr. Standish. *Wells* v. *Lavitt,* 115 Conn. 117, 119, 120, 160 Atl. 617; *State* v. *Guilfoyle,* 109 Conn. 124, 133, 145 Atl. 761; *McCue* v. *McCue,* 100 Conn. 448, 453, 123 Atl. 914.

Counsel called another physician and sought to question him as to whether he had been called by a physician who was on the staff of the New Britain

Hospital and asked whether he had expressed an opinion to the plaintiff in connection with this case, and whether the statement had then been made to him that he would be "run out of town" if he testified against this defendant. The court excluded this proffered testimony, saying that, in the light of the record, it appeared to have no pertinency to the issues of the case and that its introduction would only raise collateral issues before the jury.

The record indicates that the plaintiff was seeking by the questions asked of Dr. Standish and by his proffered testimony, to show that the Medical Society had endeavored to use its influence to prevent the plaintiff from securing expert medical testimony in support of her claim. There can be no question of the right of the Society to investigate any claim of malpractice brought against one of its members or to render such member any proper aid in his defense. The limits of such proper aid, however, manifestly do not include the production of testimony which is untrue, or the opinions of witnesses which are not honestly entertained by them, the prevention of the attendance of witnesses, the suppression of any relevant evidence, or other interference with the orderly and normal course of court procedure. Any act of this improper character by any member of the Society, or participation in it by him, would render such member liable to statutory penalties, and, it may be, for conspiracy at common law.

Even if such conduct could have been shown in the present action, it would not have supplied the place of the necessary expert testimony. Its relevance would appear only if it could be shown, under the applicable rules for the admission of evidence, to have influenced the testimony actually given. There is nothing in the proffered testimony which shows it to have been rele-

vant to the issues in the case. We conclude that the court was not in error in this ruling.

There is no error.

In this opinion the other judges concurred.