VENTANAS DEL CARIBE, S.A. *v.* THE STANLEY WORKS

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

132

Argued March 6—decided April 3, 1969

*James F. Dawson* and *Joseph Neiman,* for the appellant (plaintiff).

*Morris Tyler,* with whom was *Louis M. Winer,* for the appellee (defendant).

KING, C. J.  On February 15, 1956, the defendant, The Stanley Works, through its agent, The Stanley Building Specialties Company, entered into a dealership contract with Arnold J. Mayher.  Among other things, the contract provided that Mayher was to form a corporation in Cuba which, upon organization, would be substituted for him as a contracting party.  Pursuant to this provision, on February 16, 1958, the plaintiff, Ventanas Del Caribe, S. A., was incorporated under the laws of Cuba and entered into a contract with the defend-

ant which, except for the provision as to the formation of a corporation, was virtually identical to, and supplanted, the original contract with Mayher. The contract with the corporation is hereinafter referred to as the contract.

The contract provided that the defendant was to supply the plaintiff with unfabricated aluminum materials and component parts for the manufacture of aluminum and glass jalousies and aluminum awning windows. The defendant promised not to supply these materials to any other dealer or consumer in Cuba so long as the plaintiff remained in good standing under the contract. The plaintiff was obligated to purchase a minimum of $90,000 worth of materials from the defendant each year, but otherwise it was under no obligation to make purchases from the defendant. The contract was to run for ten years but either party was given the right to terminate it upon giving ninety days' written notice to the other.

Pursuant to this termination clause, the defendant, on August 5, 1958, notified the plaintiff that the contract would be terminated as of November 5, 1958, ninety days from the date of notice. The defendant notified the plaintiff's customers that there would soon be a new Cuban dealer for Stanley products, and, upon termination of the contract, a corporation, Estructuras Modernas de Alumino, S. A., hereinafter referred to as Estructuras, was formed and replaced the plaintiff as the defendant's exclusive dealer in Cuba. The plaintiff continued in business by obtaining similar products from other manufacturers, and, indeed, by January, 1959, its sales were twice what they had been eight months before.

Despite this increase in its business fortunes, the

plaintiff brought suit against the defendant claiming a breach of implied and express terms of the contract. The Superior Court found the issues for the defendant and rendered judgment accordingly, and the plaintiff has appealed. The contract provided, and the parties agree, that the law of Florida would govern the construction and interpretation of the terms of the contract. While the plaintiff made some claims for correction of the finding, no corrections can be made which will be of benefit to it.

## I

The plaintiff's first claim is that the defendant "established" Estructuras as its dealer before the termination of the contract with the plaintiff and that this was in violation of the clause of the contract which provided that "[s]o long as . . . [the plaintiff] shall be in good standing under this contract, Stanley agrees that it will not . . . establish any dealer other than . . . [the plaintiff] in Cuba." The defendant agrees that this clause prohibits the defendant from having more than one dealer in Cuba at any one time but maintains that it was not intended to, nor did it, prevent the defendant from taking steps to establish a new dealership to commence at the termination of the plaintiff's contract.

The finding discloses that prior to and during the ninety-day period ending on November 5, 1958, the defendant honored all of the plaintiff's orders under the agreement and did not do business in Cuba with any dealer other than the plaintiff. On November 5, 1958, when the plaintiff's dealership contract terminated, Estructuras became the defendant's dealer in Cuba. The plaintiff, however, emphasizes that prior to the termination date, and, indeed, prior to the date of notification of termination, representa-

tives of the defendant had discussed a new dealership with the plaintiff's vice-president, Alfredo Guerra, who subsequently became an officer of Estructuras, and that the defendant had rendered assistance in the formation of Estructuras by advising as to plant site and tooling and materials necessary for a dealership.

The trial court concluded that the defendant had not "established" Estructuras as its dealer prior to November 5, 1958. Although the defendant took steps to establish Estructuras prior to that date, the final act necessary for establishment, the granting of the right to sell the defendant's products, did not take place, nor were any such products sold by Estructuras, until after the contract had terminated in accordance with its terms. Thus, the court's conclusion was fully warranted.

## II

Perhaps the plaintiff's main claim is that under Florida law a termination clause in a dealership contract cannot be utilized without payment of indemnity when to do so would deprive the dealer of his "franchise" before he had had a reasonable opportunity to recoup the investment necessarily required by the contract. To support its position, the plaintiff cites the following Florida decisions: *Florida-Georgia Chemical Co.* v. *National Laboratories, Inc.*, 153 So. 2d 752 (Dist. Ct. App.); *Bernecker* v. *Bernecker*, 60 So. 2d 399; and a series of cases entitled *Sanchez* v. *Crandon Wholesale Drug Co.*, which are reported at 194 So. 2d 646 (Dist. Ct. App.), 174 So. 2d 780 (Dist. Ct. App.), 173 So. 2d 687 (Dist. Ct. App.), and 167 So. 2d 640 (Dist. Ct. App).

We cannot agree with the plaintiff's interpretation of the foregoing Florida cases. The most which

can be said is that in the *Florida-Georgia* case and the *Sanchez* cases, the Florida courts recognized that, where a dealership contract does not contain an express provision conferring a right of termination, a covenant might be implied in fact that the principal should not terminate the contract prior to the expiration of a reasonable time. *Florida-Georgia Chemical Co. v. National Laboratories, Inc.,* supra, 754; *Sanchez v. Crandon Wholesale Drug Co.,* 194 So. 2d 646, 648 (Dist. Ct. App.). The contract in the instant case did contain a termination clause, and under Florida law the defendant was free to exercise it in accordance with its terms. *Cadillac LaSalle Co. v. Claude Nolan, Inc.,* 118 Fla. 250, 252, 158 So. 883; see 6 Corbin, Contracts § 1266, p. 66; 9 Williston, Contracts (3d Ed.) § 1017A, pp. 137, 155; 17A C.J.S., Contracts, § 399; 17 Am. Jur. 2d, Contracts, § 495. The *Bernecker* case does not support the plaintiff's position and indeed recognizes (p. 405) that a termination in accordance with the terms of a contract would be both privileged and effective.

## III

The plaintiff claims that the defendant violated a term of the contract, implied in fact, not to hinder or obstruct the plaintiff in the performance of the contract by its action in negotiating with Alfredo Guerra and inducing him to leave the plaintiff's employ. The short answer to this claim is that the finding does not show that the plaintiff's performance of the contract was hindered or obstructed in any way by the defendant's actions or even that any action on the part of the defendant caused or induced Guerra to leave the plaintiff's employ prior to the date of termination of the contract.

In its brief the plaintiff claims that the defendant committed a tort by interfering with the relationship between Guerra and his employer, the plaintiff. As the defendant points out, however, the complaint did not allege that or any other cause of action in tort and consequently could not support a recovery in tort.

## IV

The plaintiff claims that the court made improper use of the defendant's exhibit 2. During the cross-examination of the plaintiff's witness John Meyers, who had been a representative of the defendant, the defendant's exhibit 2 was admitted into evidence, without objection, for the limited purpose of impeaching Meyers by showing that he had made prior statements inconsistent with his testimony. In its memorandum of decision, the court, after concluding that the plaintiff had not proven a breach of contract, made reference to the exhibit as follows: "See defendant's exhibit 2, a statement in considerable detail on the circumstances surrounding the termination of the contract." The plaintiff has seized upon this quoted statement as the basis for a claim that the court must have erroneously used exhibit 2 for the truth of the matter stated therein.

While the quoted language, if it stood alone, might perhaps be susceptible of the interpretation which the plaintiff has put upon it, such an interpretation is in conflict with the finding, which clearly indicates that the court completely understood the limited purpose for which the exhibit was admitted and that it used the exhibit to discredit certain statements of the witness Meyers. Moreover, the reference to exhibit 2 in the memorandum of decision is entirely consistent with, and supports, the court's conclusion

that the plaintiff had not satisfied its burden of proving a breach of contract. This was an issue which the plaintiff supported in part by the testimony of Meyers, and it was his testimony which the exhibit was used to discredit.

## V

The plaintiff's remaining claims are without merit and need not be discussed.

There is no error.

In this opinion the other judges concurred.