### STATE OF CONNECTICUT *v.* HAROLD JASPER
### (11250)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued December 6, 1985—decision released May 27, 1986

*John S. Pinney,* special public defender, with whom, on the brief, were *Sara L. Bernstein* and *Thomas E. Gaffey,* for the appellant (defendant).

*Mary M. Galvin,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Patricia B. Perkins,* special assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The principal issue in this case is the application of the rules adopted today in *State* v. *Graham,* 200 Conn. 9, 509 A.2d 493 (1986), governing the state's use of a prior inconsistent statement to impeach its own witness. A jury found the defendant, Harold Jasper, guilty of attempted arson in the first degree in violation of General Statutes §§ 53a-49 and 53a-111 (a). The trial court rendered judgment in accordance with the jury verdict and sentenced the

defendant to a term of imprisonment of not less than two nor more than four years. The defendant appeals from the judgment of conviction.

The jury could reasonably have found the following facts. In the early morning of July 17, 1979, the defendant went to the house of his uncle, Roosevelt Gillian, and demanded that he give him a dollar. When he refused, the defendant became angry and threatened to burn his uncle's house. The defendant then ran to his car and obtained a can containing gasoline. He poured the gas on the front porch of the house and produced some matches. At the time, there were two small children in the house.

It is disputed as to exactly what happened after the defendant took out the matches. On the day of the incident, Gillian gave the following sworn statement to an investigating officer: "We had an argument and he became real mad and he said he was going to burn the house down. Harold Jasper then went to his car and got a can of gas from the car and started throwing it all over my front porch. After he threw the gas on my front porch, he started to strike a match, but at this time I grabbed him and the match went out before he could light the gasoline that he had thrown on the porch. After the match went out, he ran up to the driveway and came in my back kitchen door and started breaking up things inside the house. Then he ran out of the house and got in his car and he pulled on out from the front of my house." Gillian was called by the state to testify at trial but his testimony differed from that in the statement. He testified that the defendant did not strike a match. Gillian said that he pushed the defendant and warned him to leave before he got into trouble. Gillian thought the warning brought the defendant to his senses and stopped him from striking the match because he said "you are right" and then left.

During direct and again on redirect examination, the state requested that Gillian be declared a hostile witness because of the inconsistency between his testimony and his prior statement. The court initially denied the request but later found the witness' testimony to contain substantial inconsistencies. It declared Gillian to be hostile and permitted the state to impeach its own witness. The state's attorney read Gillian his prior statement and he responded that it was not the true version of the facts. The written statement was marked for identification but was not admitted into evidence as a full exhibit.[1]

After the close of evidence, the court instructed the jury that Gillian's prior statement should not be used to prove the truth of the facts contained therein and was only available to impeach Gillian's credibility at trial. The defendant excepted to the charge on the ground that the instruction did not adequately explain to the jury the limited use of the statement. In the course of its deliberations, the jury asked a question of the court which specifically referred to facts contained in the prior statement. The trial court again admonished the jury that the statement was not introduced "to prove the truth of the facts contained in the statement, but as evidence of conduct which was inconsistent with his testimony on the stand."

The defendant claims on appeal that the trial court erred in declaring Gillian to be a hostile witness, that the introduction of the prior statement under the guise of impeachment was improper and prejudicial, and that the trial court failed to instruct the jury adequately on the limited use of the prior statement. We find no error.

---

[1] The statement was read to Gillian in front of the jury and he denied its accuracy. The state's attorney then offered it into evidence as a full exhibit and the defendant objected on the ground that it was not truly inconsistent with the prior testimony. The court sustained the objection without articulating its reasons.

Arguing that the state failed to show "surprise" or "hostility" as required by such cases as *State* v. *Mitchell,* 169 Conn. 161, 362 A.2d 808 (1975), and *Schmeltz* v. *Tracy,* 119 Conn. 492, 177 A. 520 (1935), the defendant claims that the court should not have declared Gillian to be hostile and should not have allowed the state to impeach its own witness. In *State* v. *Graham,* supra, however, we decided to eliminate the requirement that one must establish surprise, hostility or adversity and held that a party can impeach his own witness in the same manner as an opposing party's witness. Id., 17. Given this modification of our rule, therefore, the defendant's argument that the trial court abused its discretion in allowing the state to impeach its own witness must fail.

The defendant also contends that the state introduced Gillian's prior statement not to impeach his credibility but to place before the jury the facts contained in the statement. He claims that this tactic was improper and prejudiced his defense.

We recognized in *Graham* that the prosecution may not use a prior inconsistent statement under the guise of impeachment to bring before the jury evidence which is not otherwise admissible. See also *United States* v. *Hogan,* 763 F.2d 697, 703 (5th Cir. 1985); *United States* v. *Coppola,* 479 F.2d 1153, 1158 (10th Cir. 1973); McCormick, Evidence (3d Ed. 1984) § 38. The introduction of the statement is improper, however, only where the primary purpose of calling the witness is to impeach him and the state's attorney introduces the prior inconsistent statement in hope that the jury will use it substantively. *State* v. *Graham,* supra; see *United States* v. *Hogan,* supra. In this case, we cannot agree that the primary purpose of calling Gillian was to impeach him or that the state's attorney used the prior inconsistent statement to place before the jury evidence not otherwise admissible. Gillian was the only eyewitness to the

crime and had to be called to testify as to the defendant's actions that morning. Gillian's testimony on direct examination that the defendant had come to his house, had poured gasoline on the porch, and had threatened to burn his house was necessary to establish the elements of attempted arson. See General Statutes § 53a-49 (a) (2). The state recognized that Gillian's testimony concerning the match may have indicated to the jury that the defendant had abandoned his effort to commit arson and thus had raised the defense of renunciation pursuant to General Statutes § 53a-49 (c). The state, as a result, sought to impeach his credibility in that respect by using his prior inconsistent statement. The only way to give the jury the benefit of this inconsistency was to introduce the statement. See *State* v. *Harris,* 182 Conn. 220, 227, 438 A.2d 38 (1980). Impeachment by such means, absent the state's purposeful use of the rule as a subterfuge, was therefore proper even though the substance of the statement was inculpatory. *United States* v. *Hogan,* supra, 702.

The defendant's final claim is that the trial court improperly charged the jury on the evidentiary value of Gillian's testimony. He argues that the charge was confusing and incorrectly stated the law governing prior inconsistent statements.[2]

The court gave the following instructions to the jury on the use of Gillian's prior statement: "Now, in this case Roosevelt Gillian . . . testified that the defendant put the matches back into his pocket and said you are right Uncle Roosevelt and he drove his car away. Now, the state attempted to impeach Mr. Gillian's

---

[2] The defendant also claims that the trial court should have given a specific cautionary instruction on the use of the prior inconsistent statement at the time it was used to impeach Gillian. Because he failed to request such an instruction and the claimed error does not present an "exceptional circumstance" under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), we do not address this claim.

credibility on this point by showing that this version was inconsistent with what he had previously told Officer Haeckel. Such evidence of a prior inconsistent statement is admitted solely to impeach the credibility of the witness who made it. Now, evidence of prior inconsistent statements [made] out of court by a witness, whether written or oral, inconsistent with his testimony on the stand is admitted not to prove the truth of the facts contained in any such statement so made out of court, but as evidence of conduct inconsistent with his testimony on the stand. You should consider such evidence, therefore, like any other evidence of that consistent conduct that determines the weight to be given to the testimony of such witness on the stand."

The trial court later in its charge reiterated these instructions. After outlining Gillian's in-court testimony, the court stated: "At some point he did take out matches and then—Roosevelt Gillian testified he didn't light the matches. However, there was a prior statement that was introduced to impeach his testimony and again as I have already charged you what was stated in that statement is not evidence, but it goes to the credibility of Roosevelt Gillian as to the events that he related here in court."

During its deliberations, the jury asked a question concerning facts which were from Gillian's out-of-court statement. In response to the question, the court recharged the jury in the following manner: "As I told you in my charge, the evidence of that prior statement which was made by him was admitted not to prove the truth of the facts contained in the statement, but as evidence of conduct which was inconsistent with his testimony on the stand . . . . I don't know if you fully understand, but there is a technical reason why the contents of that statement—they are not in evidence for you, but the contents of that statement were only used

to establish that there was some question as to the credibility of Roosevelt Gillian . . . ."

It is well established that "[a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case." *State* v. *Estep,* 186 Conn. 648, 651–52, 443 A.2d 483 (1982); *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); *Farlow* v. *Connecticut Co.,* 147 Conn. 644, 648, 166 A.2d 202 (1960); *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 (1933). " 'The charge is to be read as a whole and individual instructions are not to be judged in "artificial isolation" from the overall charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978); *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Mullings,* 166 Conn. 268, 274–75, 348 A.2d 635 (1974).' *State* v. *Estep,* [supra, 652]." *State* v. *Maturo,* 188 Conn. 591, 599, 452 A.2d 642 (1982).

We fail to see how the challenged instructions in this case were incorrect in stating the law. Prior inconsistent statements are admissible only for the limited purpose of attacking the witness' credibility and may not be used to prove the truth of matters contained therein. *State* v. *Burns,* 173 Conn. 317, 327, 377 A.2d 1082 (1977); *State* v. *Villafane,* 171 Conn. 644, 672, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 588 (1977); *State* v. *Volpe,* 113 Conn. 288, 292, 155 A. 223 (1931). The trial court adequately explained that Gillian's prior statement was admissible only for the purpose of impeaching his credibility. The court also explicitly charged that the out-of-court

statement had no probative value and was not being introduced to prove the truth of the facts contained therein. On the whole, therefore, the court's instructions were correct.

Likewise, we do not feel that the court's instructions were confusing. The defendant claims that the court's use of the word "conduct," when it meant "statement," misled the jury. When the court's charge is read as a whole, however, it becomes clear that a reasonable juror would have understood that the court's reference to "conduct" was in relation to the prior statement given by Gillian. The defendant also claims that it was misleading to charge: "You should consider such evidence, therefore, like any other evidence of that consistent conduct that determines the weight to be given to the testimony . . . . " While the sentence itself is not the model of clarity, we do not feel that the statement read in context would lead the jury to believe, as the defendant suggests, that it should use the prior inconsistent statement for purposes other than impeachment. Further, even if the jury were confused by this sentence, the court's later instructions would have dispelled any misconception.

There is no error.

In this opinion the other justices concurred.