### STATE OF CONNECTICUT *v.* ANTONIO RIVERA
### (12725)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued March 6—decision released May 27, 1986

*Joseph M. Shortall,* chief public defender, with whom, on the brief, was *Michael A. Connor, Jr.,* public defender, for the appellant (defendant).

*Kathleen M. Van Der Aue,* special assistant state's attorney, with whom, on the brief, were *John M. Bailey,*

state's attorney, *James G. Clark,* deputy assistant state's attorney, and *Lawrence Daly,* assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant, Antonio Rivera, was charged by information with two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] He elected a trial to the court and on September 25, 1984, was found guilty of one count of robbery in the first degree and one count of attempted robbery in the first degree.[2] He subsequently received a total effective sentence of fifteen years imprisonment. On appeal, he raises two claims of error: (1) that there was insufficient evidence to convict him of the crimes; and (2) that the trial court erred in permitting the state to impeach its own witness. We find no error.

The court, sitting as the trier of fact, found that the defendant and another man entered the Garment Care Cleaners in Hartford at approximately 5:30 p.m. on November 14, 1983, stole money from the store's cash register and attempted to rob a customer, William

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[2] Although the judgment file of this case and the defendant's brief indicate that the defendant was found guilty of robbery in the first degree on the second count, the state correctly points out and the transcript of the proceedings below confirm that the defendant was found guilty of *attempted* robbery in the first degree on that count. General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

Klossey. The defendant was unarmed and wore a ski band over his eyes with holes cut in it so that he could see. The other man carried a gun. The only two people in the store at the time were Klossey and an employee, Diane Blaszkiewicz. The defendant pushed Klossey from behind, searched his pockets and ordered the other robber to take the money from the register. The two men were in the store approximately four minutes before they fled on foot.

At trial, the state called four principal witnesses: Klossey, Officer Nancy McClure, Blaszkiewicz and Detective Joseph Schatz. The defendant chose not to take the stand and not to call any witnesses on his own behalf.

Klossey testified about how the robbery had occurred and how one of the men had searched him. He made no in-court identification of the defendant, but said that Blaszkiewicz, who had been upset by the robbery, had exclaimed at least three times while the two men were leaving that "It's Tony, I know him." The defendant objected to the introduction of the statements on hearsay grounds, but the court admitted them under the spontaneous utterance exception.[3]

McClure, one of the Hartford police officers who investigated the crimes, testified that when she arrived at the store a few minutes after the robbery, Blaszkiewicz had appeared angry. She said that Blaszkiewicz first described the assailants and then selected a photograph of the defendant from an array by pounding her finger on it and signing the back.[4] During her testimony McClure was never specifically asked,

---

[3] See *Johnson* v. *Newell*, 160 Conn. 269, 278–79, 278 A.2d 776 (1971). The defendant does not contest the propriety of this ruling on appeal.

[4] Blaszkiewicz's act of selecting the defendant's photograph was assertive conduct and may have been hearsay. The defendant, however, did not object and makes no claim on appeal that the admission of the testimony was erroneous. " 'Where hearsay evidence is admitted without objection,

nor did she volunteer, why Blaszkiewicz was shown the photos or why the defendant's photo was selected.

Blaszkiewicz testified extensively on the details of the robbery, but exculpated the defendant from involvement in the crimes. She testified that she had been acquainted with the defendant for twelve years and that she had selected his photograph because she knew him, and not because he was one of the robbers. She also testified that she knew two other people in the array shown her by the police besides the defendant. Blaszkiewicz denied ever having stated that "It's Tony, I know him" and said that the defendant's voice was different from that of either of the robbers.

Schatz was the last witness called at trial. After he took the stand, the state requested that Blaszkiewicz be declared hostile and that it be permitted to impeach her credibility by introducing a prior inconsistent statement made to Schatz shortly after the robbery. The state disclaimed surprise but argued that her testimony on the identity of the robbers was adverse to its case and that she was biased because of her close relationship with the defendant. The court declared Blaszkiewicz to be hostile and allowed the state to inquire as to what Schatz remembered her saying after the robbery. Schatz then testified that she had said, while pointing to the defendant's picture, "That's Tony, the son of a bitch that robbed me."

I

The defendant first claims that because Blaszkiewicz did not identify him as one of the robbers at trial, there was insufficient evidence to place him at the scene of

such evidence may be given such weight as the trier of fact deems that it is worth.' State v. Boyd, 178 Conn. 600, 604, 424 A.2d 279 (1979); Cutlip v. Connecticut Motor Vehicles Commissioner, 168 Conn. 94, 98, 357 A.2d 918 (1975); Pluhowsky v. New Haven, 151 Conn. 337, 343, 197 A.2d 645 (1964)." State v. Rawls, 198 Conn. 111, 118, 502 A.2d 374 (1985).

the crime and to sustain his conviction. " 'In reviewing a sufficiency of evidence claim on appeal the question presented is whether, viewing the evidence favorably to sustaining the verdict, the trier could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985); *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984)." *State* v. *Thompson,* 197 Conn. 67, 74, 495 A.2d 1054 (1985).

Reviewing the record in this case, we find that the trial court had sufficient evidence to find the defendant guilty beyond a reasonable doubt. First, it was reasonable to conclude that Blaszkiewicz had identified the defendant as a robber at the time of the crimes. Klossey testified that she had said "It's Tony, I know him" at least three times, evidence clearly implying the defendant's involvement. Blaszkiewicz also signed the defendant's photograph and angrily pounded the picture with her finger, actions from which the court could reasonably have inferred that she had selected the photo because he had robbed her. Second, the court, as trier of fact, could reasonably have disbelieved Blaszkiewicz's testimony at trial. Her testimony exculpating the defendant was impeached by both Schatz and Klossey. The court also could have discounted her testimony that she had signed the photograph only because she knew him on the ground that she did not sign the pictures of the other people she knew. Thus, the court could reasonably have credited Blaszkiewicz's earlier identification and concluded that the defendant had committed the crimes of robbery in the first degree and attempted robbery in the first degree.

## II

The defendant next claims that the court erred in declaring Blaszkiewicz a hostile witness and in allowing the state to impeach her credibility. Specifically, he argues that the state failed to establish "hostility" or "surprise" as required by such cases as *State* v. *Mitchell,* 169 Conn. 161, 362 A.2d 808 (1975), and *Schmeltz* v. *Tracy,* 119 Conn. 492, 177 A. 520 (1935). The claim rests on the common law rule which prohibited a party from impeaching his own witness, a rule that we abandoned as outmoded in *State* v. *Graham,* 200 Conn. 9, 509 A.2d 493 (1986), also decided today. In *Graham* we held that a party may impeach its own witness in the same manner as an opposing witness, without a showing of surprise, hostility or adversity. Id., 17. Thus, the defendant's argument that the court erred in declaring the witness hostile and in permitting the state to impeach her cannot succeed.

The defendant also makes the related claim that even if it were proper to allow the state to impeach its own witness, the state's use of Blaszkiewicz's prior inconsistent statement was, under the circumstances, unfair and the court in its discretion should have excluded it. In support of his argument, the defendant relies on the rule first formulated by the federal courts, and adopted today by this court in *State* v. *Graham,* supra, that the state may not impeach the credibility of its own witness by use of a prior inconsistent statement "under the guise of impeachment" for the primary purpose of placing before the trier of fact evidence which is admissible only for credibility purposes hoping that the trier would use it substantively. Id., 18; see *State* v. *Jasper,* 200 Conn. 30, 34–35, 508 A.2d 1387 (1986); see also *United States* v. *Hogan,* 763 F.2d 697, 702 (5th Cir.

1985); *United States* v. *Miller,* 664 F.2d 94, 97 (5th Cir. 1981), cert. denied, 459 U.S. 854, 103 S. Ct. 121, 74 L. Ed. 2d 106 (1982).

Although the testimony of Schatz describing the statement made by Blaszkiewicz was hearsay and admissible for impeachment purposes only; *Ventanas Del Caribe, S.A.* v. *Stanley Works,* 158 Conn. 131, 137–38, 256 A.2d 228 (1969); we cannot agree that the state introduced Blaszkiewicz as a witness for the primary purpose of impeaching her or introduced her prior statement through Schatz in the hope that the trier would use it substantively, especially where, as here, the case was tried to the court. Blaszkiewicz was one of only two witnesses to the crimes and it was necessary for the state to call her in order to elicit the details of the robbery and establish its case. She testified on direct examination over the course of three days and stated, inter alia, how the men had come into the store, what they had said, who was armed with a gun, where Klossey had been assaulted, how the money had been taken and what the robbers looked like. Klossey testified on some of these details, but he did not see everything because he was pushed to the floor by one of the men. The extensive examination of Blaszkiewicz by the state, therefore, makes it unlikely that its primary purpose in calling her was to impeach her using Schatz's testimony. See *State* v. *Jasper,* supra, 34–35; cf. *United States* v. *Hogan,* supra, 703. The record is also barren of any suggestion that the purpose of introducing the hearsay statement was as a pretext to get before the trier of fact the content of the out-of-court declaration. In fact, the substance of the statement, that she had previously said that the defendant had participated in the crimes, was already established by Klossey's testimony describing her statements during the robbery.

We conclude, therefore, that the trial court did not abuse its discretion in allowing the state to impeach Blaszkiewicz using her prior inconsistent statement.[5]

There is no error.

In this opinion the other justices concurred.

---

[5] The defendant also makes the argument that the prior inconsistent statements of Blaszkiewicz are not "statements" as defined by Practice Book § 749 and therefore are inadmissible. Section 749, however, deals only with statements to be disclosed by the parties during discovery and has no application here. A prior inconsistent statement introduced to impeach a witness need not be written and can be the witness' oral statement overheard and testified to by another. See *State* v. *Burns,* 173 Conn. 317, 327, 377 A.2d 1082 (1977).