[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The defendant has filed a motion for summary judgment claiming "no genuine issue of material fact exists with regard to the application of the statute of limitations." That being the case, the defendant argues that the action is barred by that statute. The court will now refer to the facts surrounding this matter which do not appear to be disputed.
The plaintiff owns a building in Norwich which it rented to Lawrence 
Memorial Hospital under a lease. A lease was agreed upon on December 22, 1986 and under its terms the premises were leased for one year with an option to renew under the same terms and conditions for nine years — in effect nine one-year options to review. The rental amount was $122,899.50 per year with equal monthly installments. Under the lease, the tenants agreed to pay as additional rent any increased taxes which were to be paid within fifteen days of being presented with a bill by the landlord. Also, the lease provided that if the tenant "terminated the lease or did not exercise its option to renew the lease for its full ten (10) year term, defendant would pay a pro rata share of the leasehold improvements made by the plaintiff landlord."
The term of the initial one-year lease began on March 1, 1987 and expired February 28, 1988. A Mr. Fulton represented the hospital in dealing with the plaintiff. He claims by way of affidavit that he was CT Page 10823 involved with the negotiations and implementation of the lease. Stuart Greenfield is the trustee for the property in question and initiated this suit. Paragraph 2 of the lease provided that "the lease shall be renewed automatically each year, for each option year, unless tenant shall give landlord thirty (30) days notice that they do not wish to exercise said option to renew." On January 7, 1992, Mr. Fulton wrote Mr. Greenfield to the effect that the current one-year lease was scheduled to expire on February 28, 1992 and the hospital did "not wish to exercise its option to renew its lease." The letter did say that "the hospital is interested in remaining as a tenant and would consider a monthly rental agreement which could be canceled upon issuance of a thirty (30) day written notice."
On January 13, 1992, Mr. Greenfield responded to the letter; he "acknowledged" the hospital's intention not to renew the lease and indicated it was his understanding that the hospital
would "be staying in the facility under a month-to-month tenancy at a rental of $10,241.62." Mr. Greenfield went on to say "in addition at the time you vacate you will be responsible for a pro rata share of the leasehold improvements as incorporated in paragraph 12 of the original lease. In addition, you would be responsible for any increased taxes over the amounts reflected on the list of 10/1/85." The Greenfield letter of January 13, 1992 is not referred to by the defendant which in its brief states that "pursuant to (the) written notice from the hospital (by Mr. Fulton), the lease agreement between the parties terminated on February 28, 1992. The hospital continued to rent the premises from the plaintiff for a monthly rental fee of $10,241.62 until the hospital vacated the premises in April, 2001. . . ."
The plaintiff has filed a three count complaint. In the first count the lease is referred to as to when it began and its term of years. Paragraph 4 states that "the defendant agreed under the terms of the lease" to pay the previously mentioned tax increases. It claims bills for payment were presented to the defendant by the plaintiff at the end of August for each year from 1987 through the year 2000 but "Defendant tenant has not made payment of taxes to plaintiff landlord."
The second count in paragraph 4 states "the defendant tenant agreed under paragraph 12 of the lease," that if the lease were terminated or it was not renewed by the defendant the tenant would pay a pro rata share for improvements." Paragraph 5 indicates that "based on the terms of the lease" certain monies are owed to it under the lease but the defendant has not paid "the sums due and payable under the lease."
Count three claims that certain damages were caused to the premises by CT Page 10824 the defendant which the defendant has refused to pay for although it had agreed "to make all repairs and replace any damages to the leased premises."
In advancing its motion for summary judgment, the defendant points to the fact that suit "was not commenced until December 12, 2001, over nine years after the lease was terminated" and, therefore, the action is barred by the statute of limitations.
The standards to be applied in a motion for summary judgment are well-known. The court cannot decide a material issue of fact if it finds one because parties have a constitutional right to a trial. On the other hand, if such a motion is warranted it should be granted to save parties from the cost and inconvenience of litigation. The court believes that in this case there is not a real dispute over the facts, but rather a disagreement as to the legal inferences and conclusions that should be drawn from those facts.
 (a)
The court will now try to address the issues raised by the parties.
To frame the issue before the court that correlates to the claims made in the motion for summary judgment and to the response to the motion, if the action is based on the written lease, § 52-576 (a) would seem to bar it. That statute provides that suit on a written contract must be brought "within six years after the right of action accrues." Suit was not brought until December, 2001 and for the reasons the court will now discuss the written lease was terminated in February, 1992 and after that was non-operative.
First it should be noted that a lease is simply a type of contract and ordinary rules of contract interpretation and general rules of contract law apply to leases. Warner Associates v. Logan, 50 Conn, App. 90, 94-95 (1998); Hatch Corp. v. Della Pietra, 195 Conn. 18, 20 (1985); "A lease is a contract and questions concerning it are determined in accordance with the usual contract law." Am Wax Corp. v. Chadwick, 28 Conn. App. 739, 741
(1992); Robinson v. Weitz, 171 Conn. 545, 551 (1976).
The original written lease set forth a mechanism in paragraph 2 for the lessee to terminate the lease which otherwise provides it would be automatically be renewed for nine one-year terms absent notification. The representative for the hospital used that mechanism. Mr. Fulton wrote to Mr. Greenfield in January, 1992 that the hospital did not wish to renew the lease but did desire to convert the tenancy into a month-to-month. Mr. Greenfield wrote Mr. Fulton in response that he "acknowledged" the CT Page 10825 Fulton letter and the expressed intention not to renew the lease. As a counteroffer, Mr. Greenfield indicated the lessor would accept a month-to-month tenancy but wanted the hospital to agree that it (1) would be responsible for a pro rata share of leasehold improvements when it vacated the premise "as incorporated in paragraph 12 of the original[1]
lease "(emphasis by court) and (2) would also be responsible for increased taxes over the amount reflected in the October 1, 1985 tax list." Provisions for terminating contracts are not uncommon. In fact, the general rule is that "the assent of both parties to a rescission is sometimes expressed in the original contract, as where an option to rescind is given to one or both parties. Accordingly, one of the parties to a contract may end it if the contract so provides." 17 Am.Jur.2d "Contracts", § 559, p. 571, cf Ventances Del Caribe v. StanleyWorks, 158 Conn. 131, 135 (1969).
Furthermore, "mutual assert to abandon a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties." Yale Cooperative Corp. v. Rogin, 133 Conn. 563, 568
(1947).
If more were needed on this point, § 557 of the above-referenced Am.Jur. article at p. 569 states that: " . . . the general rule is well-settled that the parties to a contract may rescind it by making a new contract inconsistent therewith." See Riverside Coal Co. v. AmericanCoal Co., 107 Conn. 40, 47-48 (1927). In expressing his desire to terminate the written lease, Mr. Fulton made an offer to enter into new contractual relations. Mr. Greenfield made a counter offer which accepted the month-to-month tenancy but added two conditions by reference to provisions that had existed in the original written lease regarding taxes and improvements. The question becomes, was a new contract for a month-to-month tenancy created as a result of these communications and the actions of the parties. The court in Cavallo v. Lewis,1 Conn. App. 519, 520 (1984) said: "It is a basic principle of contract law that in order to form a binding contract there must be an offer and acceptance based on mutual understanding by the parties." cf BridgeportPipe Engineering Co. v. Dematteo Construction Co., 159 Conn. 242, 249
(1970). Mr. Greenfield made a last offer — was there acceptance?Pleines v. Franklin Construction Co., 30 Conn. App. 612, 617 (1993) seems to provide an answer when it says:
"Acceptance may be shown by acts or conduct indicating assent to an offer or under appropriate circumstances, acceptance may be implied by the offeree's silence and inaction . . . Moreover regardless of actual intent, if the offeree's conduct leads the offeror reasonably to conclude that the CT Page 10826 offer is being accepted, acceptance has taken place as a matter of law."
The conduct of the hospital in continuing to occupy the leased premises after the previously mentioned exchange of letters following the termination of the written lease is sufficient conduct to establish acceptance by the lessee of Greenfield's last "offer".[2] A new formal written contract is not necessary for a finding that parties intended to be bound by an agreement that they may fairly be said to have reachedAmwax Corp. v. Chadwick, supra, 28 Conn. App. at p. 742.
The new agreement between the parties as to a month-to-month tenancy with the two added conditions referred to was certainly a "new" contract as distinguished from the written lease — it differed at least in one substantial respect, it was a month-to-month tenancy terminable by either party not a one-year tenancy for nine years subject to automatic renewal.
For all of the foregoing reasons, the written lease was terminated and any action upon the lease as previously indicated would be barred by the limitations statute. (b)
Certain difficulties are presented by all of this. Even giving the complaint a liberal reading, as to all counts it appears to based on the written lease and rights claiming to have accrued under the lease. But the factual posture of the case before the court on the motion and certain remarks in the defendant's brief suggest an alternative bases of recovery at least as to some of the claims presented although no motion has been made to amend the complaint.
As just discussed, it seems clear, at least to the court, that a new contractual relationship between the parties was created immediately upon termination of the lease, an ongoing month-to-month tenancy that continued until April, 2001. If the claims in the complaint were based on this type of tenancy, this would have implications on any limitations argument. But then the question arises as to whether, in fairness to the defendant, the court should consider the viability of any claim under any month-to-month lease in light of the fact that the complaint is explicitly based on the written lease?
 (i)
First the court will discuss the limitations claim in the context of the fact that the written lease was terminated and a new contractual relationship was entered into between the parties. CT Page 10827
Then the court will discuss the propriety of entertaining the just mentioned considerations given the state of these pleadings particularly the allegations of the complaint.
Let us turn then to the contractual relationship created between the parties as it existed after Mr. Fulton indicated the hospital did not wish "to renew its lease" on the subject property.
The court has previously discussed the month-to-month tenancy arrangement between the parties along with the two conditions requested by Mr. Greenfield which the court deems were accepted by the hospital. As regards month-to-month tenancies, the law appears to be well-established in out state at least that . . . "from the fact that a lease is a contract. `In the case of a rental on a month-to-month basis, that the tenancy is not regarded as a continuous one. The tenancy for each month is one separate from hat of every other month. . . . For each month, therefore, there must be a new contract of leasing.'" Bridgeport v.Barbour-Daniel Electronics, Inc., 16 Conn. App. 574, 584-85 (1988); FKJAssociates v. Karkoski, 52 Conn. App. 66, 68 (1999).
What would the statute of limitations implications of this analysis be for the claims made in this case regarding damages if suit were to be allowed based on the new, post lease, contractual relationship between the parties?
As to the agreement to pay taxes, the lessor's right of action would have accrued when the bill for the increased taxes was presented to the defendant and this is true whether the agreement to pay the taxes is considered as some sort of separate agreement apart from the obligation to pay rent or deemed part of the additional rental obligations assumed in the particular month the tax bill was sent to the lessee. This would mean the plaintiffs right of action as to many but not all of the tax bills would be barred by the statute of limitations.[3]
As to the agreement to assume responsibility for a share of the improvements, the right of accrual on this claim would arise by way of the post lease agreement at the point the lessee vacated the premises which was not until April, 2001. Apart from any other difficulties enforcement of such an agreement might present, there would not appear to be a limitations problem.
As to any claim for damages to the premises there is no indication when this might have occurred but it can fairly be assumed this happened at the time the premises were vacated. There was no agreement as to this matter after the lease was terminated although of course a variety of CT Page 10828 tort theories could be advanced made to advance this claim. The net result of all this is that if the complaint were properly framed and did not rely on the written lease, some if not all of the claims would not be barred by the limitations statute.
 (ii)
The problem with all this of course and the foregoing catalogue of damage claims is that as made in the complaint they are not based on any post written lease agreement but on the written lease.
Can the court consider claims that could have been made given the fact that they are raised by the factual record submitted by both parties?
The following comments relevant to this problem have been made:
 "The principle that a plaintiff may rely only upon what he (she) has alleged is basic. . . . `It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his (her) complaint. Matthews v. E.M.C. Corporation, 190 Conn. 700, 705 (1983).
 "What is in issue is determined by the pleadings and these must be in writing." Telesco v. Telesco, 187 Conn. 715, 720 (1982).
Also see Arey v. Warden, 187 Conn. 324, 332 (1982); Tehrani v. CenturyMedical Center, 7 Conn. App. 301, 308 (1986) which cites the just mentioned cases. An older case Kane v. Kane, 120 Conn. 184, 189 (1935) says "Facts proved but not averred cannot be made the basis of a recovery." See also Nash Engineering Co. v. Norwalk, 137 Conn. 235,239-40 (1950); Bushnell Plaza Development Corp. v. Fuzzano,38 Conn. Sup. 683, 687 (1983).
Our Supreme Court has seemed to favor permitting amendments to the pleadings in response to a motion for summary judgment. See Knoob v. Townof North Branford, 24 CLR 337 (Devlin, J.) is which the court quoted fromCitizens National Bank v. Hubney, 182 Conn. 310, 313 (1980) where the court said:
"While a trial court may be well-advised to exercise leniency when amendments are proffered in response to a motion for summary judgment, rather than on the eve of trial, we have affirmed as discretionary the denial of permission to amend under such circumstances." CT Page 10829 (Emphasis by this court.)
Here no such amendments have been offered. There is only a cryptic remark in the objection to the motion. Counsel discusses the January 13, 1992 Greenfield response to Fulton's letter where in he goes along with the month-to-month tenancy but indicates the hospital will still be responsible for a share of leasehold improvements as incorporated in paragraph 12 of the lease. Then counsel says this "shows that the parties at the very least intended to continue certain terms in the lease." But this can hardly qualify as a request to amend.
The court is constrained to grant the motion but in light of the fact that the issue raised by the court were not discussed in counsel's briefs would be very willing to grant a motion to reargue.
Corradino, J.